FRANK DALLASON,

*Plaintiff and Appellant,*

vs.

ROY H. BUCKMEIER,

*Defendant and Respondent.*

(No. 2687; June 3rd, 1955; 284 Pac. (2d) 386)

For the plaintiff and appellant the cause was submitted upon the brief of Fred W. Layman of Casper, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of Maurer and Garst of Douglas, Wyoming.

128

## OPINION

BLUME, Justice.

In this case, plaintiff below, appellant here, sued the defendant Buckmeier, respondent here, for damages caused to his Butane tank truck (generally herein referred to as tanker) in a collision on December 27, 1953, with a Chevrolet station wagon. The tanker weighed about 18,000 pounds, was 8 feet wide and about 23 to 24 feet long. It was driven at the time of the collision by one Exley, an employee of the plaintiff and appellant. The Chevrolet station wagon weighed about 3,825 pounds, was about 7 feet wide, and was driven at the time of the collision by the defendant

Buckmeier, the owner thereof. Plaintiff alleged that the collision occurred by reason of the negligence of the defendant Buckmeier. The latter answered, denying his negligence and filed a cross-petition alleging that the collision was caused by the negligence of Exley, who drove on the wrong side of the road and caused damages to his automobile and personal injuries. The cause was tried to the court without a jury. It made a general finding in favor of the defendant Buckmeier and entered judgment in his favor for $1,309.28, being $1,087 for damages to his automobile, $22.28 for medicine and doctors' bills, and $200 for pain and suffering. From that judgment the plaintiff has appealed to this court, alleging as error that the judgment of the trial court is contrary to law and the evidence.

The defendant Buckmeier testified in substance as follows: The collision occurred in a curve of the road about 16 miles from Douglas, Wyoming, on the so-called LaBonte Road, the witness traveling in a general southwesterly direction, while Exley was driving in a general northeasterly direction. Witness left Douglas at 10:20 in the morning of December 27, 1953, and the collision occurred at 11:10 of that morning, thus traveling on the average rate of about 20 miles an hour. His vehicle was in good condition; his brakes perfect. The curve mentioned was filled with snow and was icy. The road curved round a high cut bank (from 6 to 8 feet high) to the witness' right, and was slightly upgrade in the direction in which he was traveling. The road at the place of collision was about 28 feet wide. When in the curve, he was traveling about 20 miles an hour and on the right side of the road about 2 feet or less from the inner margin thereof. He saw Exley when about 193 feet away. The latter was in witness' lane of travel and about 4 feet from the embankment. Witness reduced his speed and applied his brakes, but he felt the car skidding. Apparently Exley did not see witness

but kept on traveling along the same path in which he had been traveling. So when about 70 feet from Exley, it appeared to him that Exley was not going to turn to his right and he then swerved sharply to the left to avoid a head-on collision, not being able to turn to his right on account of the embankment. After swerving to the left, he tried to accelerate the car, but the car did not respond. It seemed to him that Exley turned to his right shortly after he himself (witness) turned to his left. (Q. 65) He, Buckmeier, after he swerved to his left traveled about 30 feet and then he collided with the tanker. The Chevrolet car struck the tanker slightly on the right side of the middle of the radiator. After the collision both car and tanker stood side by side across the road, the fronts facing the outside of the curve. To give a somewhat more vivid picture of the reason why the witness swerved to his left, we shall give part of his testimony verbatim. "A. I had applied my brakes when I first saw the vehicle, in an attempt to slow down, and when I found that I couldn't stop it seemed to me like the other driver didn't see me or something because he made no attempt to turn to his right, to his correct lane of traffic. And seeing this, there was only one thing left for me to do and that was try to get out of the way. So I turned to the left to try to take the borrow pit." Again he stated: "A. Well, when I was coming around this curve, just as soon as I saw the tanker I touched my brakes and I could feel that the car was skidding. And the car proceeded in the direction that I was going, and it appeared to me that the other driver did not see me. And as we were approaching, why, I couldn't turn to my right because of the bluff on the right, so I had to take what I thought was the only chance to escape him, and that was turn to the left and take the borrow pit on the left-hand side of the road."

Exley did not deny that for a time he was traveling

too close to his left, but stated that when the vehicles were 70 feet apart, defendant could have passed him if he had stayed on his own side, although "it would have been close." The witness Norton testified that while tracing the tanker some 30 feet back of the place of collision and up to that place, Exley was traveling about four feet from the inside of the curve. "He was on the wrong side of the road, to the left." The witness Alexander corroborated the witness Norton, and testified in part as follows: The Chevrolet tracks were on the right-hand side of the road about as close as you could get. He knew the culvert which was about 30 to 40 feet west of where the vehicles were standing (the direction from which Exley had traveled). "Q. Can you tell the Court what side of the road, or what lane of traffic the track showed the truck to be in at the time they passed over that culvert? A. He was on his wrong side; the left side. Q. How far back did you trace these tracks? A. He was on the wrong side of the road pretty near all the way back from the culvert. You could see his skid marks. Q. Did the tracks show that the tanker turned out abruptly to its right? A. No, it hadn't turned sharply to the right   *   *   * it most-ly went straight."

Counsel for appellant argues that Buckmeier ought to have known that the tanker was being turned to the right, and that there would have been ample room for the Chevrolet car to pass or stop without colliding with the tanker. Some of the arguments we are unable to follow. Counsel even chooses to ignore the testimony of Exley that the space for Buckmeier to pass was not "ample", as counsel says, but that "it would have been close." In any event there was ample testimony in the record to warrant the trial court in finding that Exley was on the wrong side of the road substantially up to the time of the collision, leaving insufficient room for Buckmeier to pass on his right side on account of the

embankment on that side. In the case of Bloom v. Bailey, 292 Pa. 348, 141 A. 150, 152, 57 A.L.R. 585, the court stated: "Where there is a clear view, it is not negligence to drive in the center of the highway, or even on the opposite side; but, in rounding a curve or approaching the summit of a hill, where the view is shortened, it is the driver's duty to keep on the right side." The Annotation in 57 A.L.R. cites cases from seven jurisdictions in which the foregoing rule was applied when the parties involved were rounding a curve. In fact the rule is attempted to be prescribed by § 60-505, W.C.S. 1945, stating that a traveler must turn to the right "When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed." See also Wallis v. Nauman, 61 Wyo. 231, 157 P. 2d 285.

Counsel for the appellant argues earnestly and at length that the proximate cause of the collision was the negligent speed at which the defendant Buckmeier traveled, and he contends that defendant Buckmeier traveled much faster than at 20 miles per hour. The testimony does not, however, bear that out. Among other things counsel calls attention to the fact that the tanker, with its 18,000 pounds of weight, was swung around so as to straddle the road, and he seems to think that this would have been impossible except for the great speed of the Chevrolet car. However, the road was icy. For aught we know it may not, in view of that fact, have taken a great deal of force to put the tanker into the position mentioned. Counsel also calls attention to the fact that the Chevrolet car was almost a complete wreck after the collision, and he argues that in view of the weight of the tanker, the energy transmitted to cause this wreck must have come from the Chevrolet car, traveling at great speed. However, counsel's argument is in the main based on the testimony of Exley, when he testified that immediately before the

collision he had reduced the speed to about three or five miles per hour. But the trial court was not bound to accept that testimony. Buckmeier testified that Exley's speed was from 20 to 25 miles per hour. He further testified that when he left his side of the road, when 70 feet distant from the tanker, he thereafter traveled not to exceed 30 feet before the collision occurred. That is corroborated by the witness Harry Smith. Hence it is apparent that the tanker must have traveled at least at the same speed as the Chevrolet so that if the latter was traveling at 20 miles per hour, as the testimony indicates, the tanker must have been traveling at least at the same rate of speed, and because of its weight transmitted the energy that caused the Chevrolet to become a wreck. At least the testimony in the case was such as to warrant the trial court in so finding.

Counsel for appellant calls our attention to 60 C.J.S. § 295, pp. 700, 701, where it is stated: " * * * due care at a corner or curve requires that the operator of a motor vehicle shall have his car under such control and travel at such a moderate rate of speed that he may be able to round the curve or turn the corner without danger or injury to other travelers or to himself." Counsel says that defendant Buckmeier failed to comply with this rule. But does he not attempt to fit his shoe on the wrong foot? He asks why Buckmeier had not stopped or guided his car to avoid the accident. He answers his own question by saying that it was due to the highly dangerous rate of speed at which the defendant was traveling. However, in the first place counsel's position is not based on the evidence. We cannot say that the speed of 20 miles per hour at which Buckmeier traveled was negligent as a matter of law. As stated in 38 Am. Jur. 1042: "As a general rule, the issue or issues of negligence and contributory negligence are to be determined by the jury." The rule that

applies to a jury applies when the case is tried to the court without a jury. We considered a contention similar to that in this case in the case of O'Mally v. Eagan, 43 Wyo. 233, 2 P. 2d 1063, 77 A.L.R. 582, where we held that defendant could not be held negligent in not sooner determining that the other party would not turn out, or in not stopping. We cited Shaw v. Wilcox, Mo. App., 224 S.W. 58, 59, where the court said: "The duty of plaintiff to stop or take other such precaution only arose when by due care plaintiff discovered that defendant could not or would not himself turn to the right and clear plaintiff's way. A condition of discoverable peril must have existed. Indeed, we doubt if a duty to stop on plaintiff's part ever arose in this case, as such duty only arises when it becomes apparent to plaintiff that he might not be able to avoid a collision by himself turning his car to the left and going around the defendant." We cannot say as a matter of law that Buckmeier should have stopped his car, or should have attempted to stop his car, when the parties were 193 feet apart. He had a right to assume that Exley would observe the law and turn to his side of the road. Goodson v. Schuster's Wholesale Produce Co., 10 La. App. 486, 120 So. 689, 691, O'Mally v. Eagan, supra. So far as we can judge from the testimony, Buckmeier did not discover, or at least did not appreciate, his condition of imminent peril until the tanker was 70 feet away. There is some doubt in view of the slippery condition of the road that he then could have stopped his car. If he had continued to go forward, there would have been a collision in all likelihood, and that in a little over a second's time. Even if Buckmeier had stopped and Exley had continued to travel at the rate of 20 miles an hour, and Buckmeier had not turned to the left, a collision would have occurred in all likelihood in a little more than 2 seconds of time. In fact with the tanker 23 feet in length, it is doubtful that Exley could have

gotten it out of the wrong lane of travel by turning to his right when 70 feet away from Buckmeier. If that is correct, then if there was any duty to stop, it was that of Exley. The collision might have been avoided by Exley bringing his tanker to a stop and probably not in any other manner. But according to the testimony of Buckmeier, it is doubtful that Exley kept a proper lookout which was doubtless part of the cause of the collision. In any event there can scarcely be any doubt that Buckmeier was faced with an emergency, and that such an emergency was not caused by him either in whole or in part. The trial court had at least the right, under the evidence, to so find. It is said in 60 C.J.S. § 257, pp. 624, 625, 626, as follows:

"Where the operator of a motor vehicle is by sudden emergency, not caused in whole or in part by him, placed in a position of imminent peril to himself or to another, without sufficient time in which to determine with certainty the best course to pursue, he is not held to the same coolness, accuracy of judgment, or degree of care as is required of him under ordinary circumstances, or of one having ample opportunity for the full exercise of judgment, and is not liable for injuries caused by his vehicle if an accident occurs, provided he exercises ordinary or reasonable care or prudence, considering the stress of the circumstances, to avoid an accident, and, according to the decisions on the question, acts in a way not obviously faulty or which cannot reasonably be found improper or imprudent, and even though a course of action other than that which he pursues might have been better, safer, or more judicious."

We applied this rule in Wells v. McKenzie, 50 Wyo. 412, 62 P. 2d 305.

60 C.J.S. § 282, p. 660, states:

"Statutes, ordinances, or other regulations or rules requiring motor vehicles to be driven on the right-hand side of the highway or street are not intended to, and

do not, prohibit a motorist from driving to the left of the center of the highway or street in trying, in an emergency, to avoid an accident. In case of an emergency it may be not only excusable but perfectly proper for an automobilist to turn to the left side of the road in order to escape from danger or avoid injuring others."

The proximate cause of an accident is ordinarily a question of fact to be determined by the trier of facts, unless only one inference or conclusion can be drawn from the evidence. O'Mally v. Eagan, supra. It is stated in 65 C.J.S. § 264, p. 1183 et seq.:

"In action for negligence the question of proximate cause of the injury ordinarily is considered to be a question of fact for the jury or other trier of facts, or, as it is sometimes stated, it is a mixed question of law and fact for the jury; and this rule applies to the question of whether or not defendant's negligence or conduct, or whether plaintiff's or the injured person's negligence or conduct, as the case may be, was or was not the or a proximate cause in injury."

It is quite apparent from the general finding of the trial court, that in this case it found the proximate cause of the collision and the damages resulting therefrom to be the negligence of Exley, the driver of the tanker, mainly, perhaps, because he was driving on the wrong side of the road. We cannot say that this determination was wrong. In fact we think that it was clearly right, and hence the judgment herein must be and is affirmed.

*Affirmed.*

RINER, C. J., and HARNSBERGER, J., concur.