**SOUTH CHEYENNE WATER AND SEW-
ER DISTRICT, Appellant
(Defendant below),**

v.

**Madeline STUNDON and Robert Stundon,
Appellees (Plaintiffs below).**

No. 3911.

Supreme Court of Wyoming.

March 31, 1971.

Carl Lathrop and R. Michael Mullikin, of Lathrop, Lathrop & Uchner, Cheyenne, for appellant.

Weston W. Reeves, of Graves & Smyth, Cheyenne, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Action was brought in the district court by Madeline Stundon and Robert Stundon against the South Cheyenne Water and Sewer District for damages caused to their property when a sewer line of the defendant became clogged. The clogging caused waste in the sewer to back into the basement of plaintiffs' house.

Trial was to a jury and the result was a verdict in favor of plaintiffs. Damages

were assessed at $2,500 plus costs of $90. The sewer district has appealed from judgment entered pursuant to the verdict.

Appellant's assignment of error is that the evidence was (1) insufficient to justify a finding of negligence; (2) insufficient to show that negligence on the part of defendant was a proximate cause of plaintiffs' damage; and (3) insufficient to support the jury's assessment of damages.

## Negligence

Appellant concedes it is established in Wyoming that a municipality is liable for negligence in the operation of its sewer system. In that regard it ·mentions our decision in Lore v. Town of Douglas, Wyo., 355 P.2d 367, 370, underscoring our statement therein to the effect that a municipality is not an insurer of the safe ,condition of its sewers.

We stated in the Lore opinion that the municipality is liable only for failure to exercise ordinary and reasonable care to keep its sewers in repair and free from obstruction. Arguing that negligence consists of a duty and violation of such duty, appellant asserts there is no duty on the part of defendant to make inspections of its sewer system, periodic or otherwise. It argues the evidence discloses no valid reason, prior to the flooding of plaintiffs' property, for defendant to inspect.

As we view the argument on behalf of the sewer district, its attorneys seem to believe plaintiffs could not succeed without proving the defendant had a duty to make periodic inspections of its sewer system; that it failed in this duty; and that such failure was a proximate cause of plaintiffs' damage.

Counsel argue, even if inspections were made, it would not insure that an accident like the one here involved would not happen, because it could happen between inspections. They also argue the district has some 390 manholes and periodic inspection of all of them would not be prac-

tical. Hence, they say, a failure of inspection was not a proximate cause of injury.

We do not agree the decision in this case must turn entirely on whether defendant had a duty to inspect and whether it failed to make reasonable inspections. The evidence as a whole reflects several areas where the jury might very well believe defendant was negligent. We deem it unnecessary to cite authority for the proposition that the question of negligence is for the jury, if there is substantial evidence of a failure on the part of defendant to exercise ordinary and reasonable care to keep its sewer free from obstruction.

This brings us to a review of some of the reasons for holding the verdict of the jury was warranted with respect to the district's negligence.

There was no material dispute in the evidence. It disclosed that, in close proximity to plaintiffs' property is a sewer manhole. The ring and cover of the manhole had been disturbed and material had gotten into the sewer which caused it to clog. The top of the manhole was about level with the surface of the ground; next to the manhole was a hill; approximately 0.97 inch of rain had fallen; water ran down the hill and into the manhole; the sewer being clogged, its contents backed up into the basement of plaintiffs' house.

Witnesses who had seen the displaced ring and cover of the manhole testified the lid had been pushed about six or eight inches to the side, leaving a crescent-shaped opening. The cover weighs around 350 pounds and is cemented to a cone. It would take considerable force to move it, and the witnesses surmised the cover and ring had been hit and pushed over by a patrol or road grader.

Prior to the flooding of plaintiffs' property, children were observed playing in the vicinity of the partially uncovered manhole. A witness claimed they were building a dam or dike in the borrow pit next to the manhole. Following the accident which caused plaintiffs' damage, an employee of

defendant found a lot of dirt in the manhole, together with bricks, broken tar, a number of small tin cans, and other things of that nature. Witnesses had observed the manhole in its disturbed condition approximately three weeks or a month prior to the accident.

The plant and line superintendent for defendant testified, "on a number of occasions" he had seen a manhole cover and ring removed; that the circumstances were the same as in this case, where the ring and lid were knocked off to the side of the cone. The witness claimed, in these instances, he was usually called by the county road and bridge department which had disturbed the manhole and told of the disturbance.

It was of course for the jury to say whether defendant was exercising ordinary and reasonable care when it relied on this being done by a third party, in all cases. Likewise, it was for the jury to decide whether ordinary care required defendant to better mark or otherwise prevent covers from being struck. For example, when a manhole is at the side of a road, as the one here involved was, a post was sometimes used to mark it, but not so in this instance.

One of the officers of defendant likewise testified he was aware that in the past patrols had knocked manhole lids and covers off on several occasions. It is not for us to speculate on what could or should have been done to eliminate this problem. The jury may very well have believed reasonable care required something to meet the problem.

Appellant itself points out that out of 390 manholes only 12 or 14 protrude above the ground. According to defendant's superintendent, when problems like the one here have occurred in the past, or when road dirt is eroded down past the level of the manhole, shorter rings on which the lid is placed were installed to lower the level of the manhole. The vice chairman of the district's board of directors also testified the board had given its su-

perintendent authority to lower any of the manholes that needed to be lowered for protection. He made it clear this was done so, when the need arose, the superintendent would not have to wait for board action.

We hardly need to mention that the jury might very well have believed the lid in this instance should have been lowered before trouble occurred. If such had been done, the manhole here involved would have been in keeping with the great majority of the 390 manholes and the accident which caused plaintiffs' damage would have been prevented.

In Mulloy v. Sharp Park Sanitary District, 164 Cal.App.2d 438, 330 P.2d 441, 443, it was held a sanitary district was not entitled to notice that its manhole was plugged in order to be held liable under the theory of negligence for damages resulting to a home which was flooded by sewer water and debris because the manhole was plugged. In Montana, it has been held a municipality has a duty of inspection of its sewer system as an instrumentality under its supervision and control; and the municipality becomes chargeable with notice of what a reasonable inspection would disclose. Floyd v. City of Butte, 147 Mont. 305, 412 P.2d 823, 826.

Also, in Clay v. City of Jersey City, 74 N.J.Super. 490, 181 A.2d 545, 548, it was held a municipality's duty to keep its sewers in repair is not performed by waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of municipal officials is called to the damage they have occasioned. The court said the city's duty involves the exercise of a reasonable degree of watchfulness in ascertaining the condition of the sewers from time to time, and preventing them from becoming defective.

Incidentally, when it is realized that only 12 or 14 out of 390 manholes protrude above the ground, it becomes apparent that inspection of those subject to having the lids pushed off by a grader would not be

difficult. It was of course for the jury and not for us to say what is or is not reasonable observance and inspection of such facilities. In this particular instance, it is undisputed the manhole in question remained open three weeks to a month.

### Proximate Cause

■ If the clogging of defendant's sewer caused the damage to plaintiffs— and that is undisputed—and if the jury found negligence of the sewer district led to or contributed to the clogging, it would follow as a matter of course that such negligence was a proximate cause of the injury. Or at least, the jury would be entitled to find that such negligence was a proximate cause.

Here again, it requires no citation of authority for the proposition that the question of proximate cause is for the jury. We find nothing in the record or in the argument of counsel for appellant that would compel us to say as a matter of law that negligence of defendant was not a proximate cause of injury.

### Damages

■■ There is no question but that the award of the jury for damages in this case is well within the bounds of the evidence. Bills were offered in evidence for repairs which were made. Counsel for defendant objected to the testimony of the owners and to the bills they offered in evidence. The basis of objection generally was that no proper foundation was laid.

We think the court acted without any abuse of discretion and without any prejudicial error in allowing the evidence. Appellant shows no persuasive or authorita-

tive reason for excluding any of such evidence. The principal argument on behalf of appellant, with respect to damages, seems to be that plaintiffs did not show any original value of the property damaged and no testimony with respect to its age and depreciation.

The measure of damages to property which can be repaired and substantially restored to its former condition is the reasonable cost of repair or restoration. Allied Hotels, Limited v. Barden, Okl., 389 P.2d 968, 973; Parker v. Harris Pine Mills, 206 Or. 187, 291 P.2d 709, 717, 56 A.L.R.2d 382; Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769, 774; Natural Soda Products Co. v. City of Los Angeles, 23 Cal.2d 193, 143 P.2d 12, 17, certiorari denied 321 U.S. 793, 64 S.Ct. 790, 88 L.Ed. 1082, rehearing denied 322 U.S. 768, 64 S.Ct. 942, 88 L.Ed. 1594.

It is apparent the measure of damages we have just expressed was followed in this case. We consider it a proper measure and a proper method of ascertaining damages for a case of this kind. We are shown no reason for believing it unfair or improper.

Some minor items of repair costs are objected to, but we find no prejudicial error with respect to the testimony concerning such items. Moreover, we have no way of knowing to what extent, if any, the jury allowed such items. On the whole, we do not find the award for damages excessive.

Our conclusion is that the evidence was (1) sufficient to justify the jury's finding of negligence; (2) sufficient to justify the jury's finding that such negligence was the proximate cause of plaintiffs' damage; and (3) sufficient to support the jury's assessment of damages.

Affirmed.