**CONTINENTAL PIPE LINE COMPANY,**
**Appellant (Plaintiff),**

v.

**IRWIN LIVESTOCK COMPANY, Jake Johnson, Inc., and Wyoming Farm Loan Board, State of Wyoming, Appellees (Defendants).**

**No. 5391.**

Supreme Court of Wyoming.

March 20, 1981.

Sue Davidson, Urbigkit & Whitehead, P. C., Cheyenne, signed the brief and appeared in oral argument on behalf of appellant (plaintiff).

R. R. Bostwick, Murane & Bostwick, Casper, signed the brief and appeared in oral argument on behalf of appellees (defendants).

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

ROONEY, Justice.

Appellant instituted eminent domain proceedings pursuant to § 1–26–303, W.S.1977,[1] for a nonexclusive easement on 22 miles of existing roads across the grazing lands of appellee Irwin Livestock Company and of appellee Jake Johnson, Inc. (hereinafter referred to as "appellees")[2] for the purpose of operational and maintenance access to pipeline facilities. The jury verdict and the resulting judgment awarded appellees $46,-886.40 as just compensation for the lands taken and affected by condemnation.

In appealing from such judgment, appellant words the issue for review as follows:

"Whether the Judgment with reference to the resulting damages was speculative, as well as conjectural, excessive and beyond the amount of any of the defined evidence which would justify its entry."

We find that the jury could not have made a proper award of just compensation under the evidence as presented and with the form of verdict as submitted. Accordingly, we reverse and remand for a new jury trial.

## BACKGROUND

In the early 1970's, there was a discovery of substantial oil deposits beneath grazing land owned by appellees.[3] Development of the oil wells resulted in the establishment of a number of access roads over the lands of appellees for use by the entities involved in such devolpment. Appellees had granted

---

1. Section 1–26–303, W.S.1977, provides:
   "Whenever any road, ditch, telegraph, telephone or fluming company, or any petroleum or other pipeline company, organized or to be organized under the provisions of this chapter, or any law of this state, or under the laws of any other state and legally doing business in this state, shall not have acquired by gift or purchase, any land, real estate or claim required for the construction of maintenance of their road, ditch, flume, pipe, telegraph or telephone line, or which may be affected by any operation connected with the construction or maintenance of the same, the said corporation shall have the right of eminent domain and may condemn the land, real estate, right-of-way or claim required by the corporation in the manner provided by the Wyoming Rules of Civil Procedure. *The compensation to be made to the owners or parties interested for the lands, real estate or claims to be taken or affected,* as well as all damages accruing to the owners or [of] the lands, real estate, right-of-way, or claims, taken or injuriously affected as aforesaid, *with deduction or allowance for the real benefits or advantages which the owners or parties interested may derive from the construction of the road,* ditch, flume, pipe, telegraph or telephone line, or necessary appurtenanc-es *shall be considered in the assessment of damages for the condemnation in these proceedings.*" (Emphasis supplied.)

2. Appellee Wyoming Farm Loan Board holds a mortgage on the real property owned by appellee Irwin Livestock Company. The Wyoming Farm Loan Board was necessarily joined as a party inasmuch as Rule 71.1(c)(2), W.R.C.P., requires the joinder of one holding an encumbrance on the property of the condemnee. The Wyoming Farm Loan Board filed an answer in which it said it would not "appear to join in any arguments, motions or other procedure in the disposition of such condemnation proceedings." The trial court apparently treated such answer as a disclaimer of any right to the proceeds of condemnation. Neither the verdict nor the judgment makes reference to the Wyoming Farm Loan Board.

3. Evidence was not received relative to ownership by appellees of the mineral rights under such lands, thus reflecting a benefit to them through production of the oil under the lands. An objection was sustained to a tender of testimony that appellee Jake Johnson, Inc., had no interest in such production.

nonexclusive easements for use of these roads to such entities other than appellant. Appellant is an oil pipeline utility, and it extended its pipeline to service the oil wells on appellees' lands. However, appellant and appellees could not reach an agreement for easements similar to those granted to the other entities and appellant began two eminent domain actions, one against appellees Irwin Livestock Company and Wyoming Farm Loan Board, and one against appellee Jake Johnson, Inc. The two actions were subsequently combined.[4] The parties reached an agreement relative to an easement for the pipeline itself, but the condemnation actions continued relative to the use of the access roads which were already in existence and subject to easement for use by other entities engaged in the oil field activities. After a jury trial, the following verdict form was submitted to the jury:

### "VERDICT

"We the Jury, duly empaneled and sworn to try the above-entitled case, do hereby ascertain and certify compensation as follows:

"A. The fair market value of lands used as the roadways as of the 18th day of August, 1978 as actually taken and used by the Plaintiff as a non-exclusive right to use an existing road to reach the oil development area is per rod $_____

"B. The resulting damage, if any, to the acreage adjacent to the roadway on ranch land of Defendants [sic] properties by the Plaintiffs' [sic] non-exclusive use is determined to be $_____ per rod."

The jury inserted the figures 0.20 in Paragraph A and the figures 6.46 in Paragraph B. Multiplying these figures by the 22 miles of access roads produces the $46,886.40 damage amount of the judgment.

### MEASURE OF DAMAGES

The measure of damages for a taking in eminent domain by a pipeline company is

set forth in § 1–26–303, W.S.1977 (supra at footnote 1). The pertinent portion reads:

" * * * The compensation to be made to the owners or parties interested for the lands, real estate or claims to be taken or affected, as well as all damages accruing to the owners or [of] the lands, real estate, right-of-way, or claims, taken or injuriously affected as aforesaid, with deduction or allowance for the real benefits or advantages which the owners or parties interested may derive from the construction of the road, ditch, flume, pipe, telegraph or telephone line, or necessary appurtenances shall be considered in the assessment of damages for the condemnation in these proceedings."

We have held that where there is a partial taking of property, as here, which will result in damages to the remainder not taken, the amount of just compensation to be awarded for that "taken or affected" is determined by application of the "before and after" rule, i. e. just compensation is the difference between the fair market value of the entire parcel before the taking and that after the taking. *City of Rawlins v. Jungquist,* 16 Wyo. 403, 94 P. 464, 468, 96 P. 144 (1908); *Gillespie v. Board of Com'rs of Albany County,* 47 Wyo. 1, 30 P.2d 797, 803 (1934); *Colorado Interstate Gas Company v. Uinta Development Company,* Wyo., 364 P.2d 655, 658 (1961); *Wyoming State Highway Department v. Napolitano,* Wyo., 578 P.2d 1342, 1346 (1978). See 4A Nichols on Eminent Domain § 14.232 (1979); Orgel on Valuation under Eminent Domain § 64 (1953).

The testimony in this case did not contain even one "before and after" valuation. The greater portion of the testimony of appellees' witnesses was devoted to harm caused by the intrusion of the several oil companies operating in the area. This was said to have caused appellee Irwin Livestock Company to cease the sheep aspect of its operation. Appellee Jake Johnson, Inc. did not have a sheep operation. The testimony out-

---

**4.** The separate properties of appellees were not assessed separately by the court-appointed appraisers and the jury verdict did not make an award to each appellee separately. See Rule 71.1(b) and (j)(3), W.R.C.P.

lined problems with weight loss, bummed lambs, trampled grass, excessive wear on animals' teeth from feeding on dust-covered grass, cattle movement to follow vehicles in expectation of feed, and overgrazing in areas nonadjacent to the roads—all resulting from the vehicular traffic on the roads. The problems were associated with oil activity generally and not to the road use by appellant. There was no separation of the extent or intensity of the problems between the time immediately before the date of taking by appellant, i. e., August 18, 1978, and the time after such taking.

■ Appellees presented testimony of four witnesses. One was president of appellee Irwin Livestock Company, one was president of Jake Johnson, Inc., and the other two were neighboring ranchers. The presidents of the two appellees, as owners of the condemned lands, were entitled to give their opinions of the land values. They did not do so. They and one of the other witnesses testified to a sale of nearly "similar" land and gave the *per acre* price of $100.00 to $125.00 for which it was sold, the details of the sale were not set forth, and the record is not specific as to whether or not they were testifying to the same sale. The other witness testified to having bid $113.00 *per acre* for "similar" land without making a purchase and to having refused an offer of $87.00 *per acre* for "similar" land.[5] He gave an opinion that oil activity would reduce land value by 25 to 30 percent. None of these witnesses testified to "before and after" valuations.

■ Appellant's only witness as to value, a professional appraiser, gave an opinion as to the value of the land taken, but he did not find any lands to be injuriously affected. Accordingly, a "before and after" valuation was unnecessary and was not given by him.

Evidence relative to traffic counts at specified places on the roads was introduced. It purported to show the percentage of road usage by appellant's vehicles. The apparent purpose was to attempt to prorate the damages caused by dust, etc. resulting from vehicular traffic between appellant and the other users of the roads. Of course, considerations relative to the size and weight of the vehicles, their speed, and the damaging effect resulting from geometrical as distinguished from arithmetical progression are not included in a simple traffic count.

The "before and after" rule is particularly suitable where an easement is imposed upon an easement previously carved out of a fee, as here.

"Whenever an easement is imposed upon land already burdened with an existing easement, the fee owner is entitled to the value of his land before and after the imposition of the second easement. Thus, despite an avigation easement over specified territory, where new, noisier aircraft and increased air traffic are introduced, a new and further taking will be found. If there is no substantial difference in value his damages are nominal. * * *" 4 Nichols on Eminent Domain § 12.411 (1979).

Testimony was not presented from which the jury could make an award on the basis of a liquidated amount of fair market value of appellees' parcels immediately before the taking and that after the taking.

## VERDICT

■ The verdict form required a per rod valuation of the fair market value of the land used for the roads and of the resulting damage to "acreage adjacent to the roadway."[6] Such valuation precluded a "before and after" valuation. The "adjacent" acreage was not defined. Was it 20 feet? 100 feet? One mile? Some of the adjacent

---

5. Evidence of offers of sale and purchase of lands under condemnation and of similar land in the vicinity are inadmissible in condemnation proceedings. *State Highway Commission v. Triangle Development Co.*, Wyo., 369 P.2d 864, reh. den., 371 P.2d 408 (1962).

6. At the pretrial stage of this case, the parties stipulated that the jury valuation would be in terms of "per rod."

land could be damaged more than other depending upon a different composition of the roadbed at one place as distinguished from another, or depending upon the direction of the road—whether with the prevailing wind or across it, etc. In any event, the language would prevent the jury from reaching a damage figure on the basis of a "before and after" valuation of the two parcels.[7]

The testimony concerning sale of other lands was in terms of acres. Inasmuch as appellant's appraiser witness had testified that the roadways contained 78.823 acres, the jury could convert a per acre figure to a per rod figure to obtain the value of the land within the roadways, but there was no evidence concerning the acreage of the land "adjacent" to the roadways from which the jury could properly make a per rod or per acre valuation of it.[8] The problem was expressed by the jury through its written question to the judge during deliberations:

> "When figuring area—using rods, adjacent to roadway * * * should we be using square rods or rods as linear measurement around the entire road net?"[9]

Appellees state that the "before and after" rule would be difficult, if not impossible, to apply in this case. In response to a similar statement, we said in *Colorado Interstate Gas Company v. Uinta Development Company*, supra, 364 P.2d at 658:

> "* * * The record discloses no comprehensive statement of the overall situation relating to the before and after value of the entire holdings of the defendant which criterion is universally accepted as being proper in eminent domain proceedings where as in the present instance it is claimed that damages accrued to remaining holdings by reason of the easement. Defendant's counsel argued that it was impossible to present evidence of this na-

ture, but we are unconvinced on the point. There were undoubtedly numerous experts in grazing lands, land management, and grazing activities who could have been secured to present competent evidence bearing upon this point. * * * "

Similar evidence could be presented in this case to reflect the value of the parcels immediately prior to the taking on August 18, 1978, and its value thereafter.

The testimony before the jury in this case was directed to damages resulting from oil activity by oil developing entities, not only to that resulting from the taking by appellant. The details of the separate sales testified to by appellees' witnesses were not adequate to permit an evaluation of them by the jury absent conjecture and speculation. Appellant's appraiser witness found no damage to land "affected" by the taking. The verdict form limited the "affected" area to that "adjacent" to the roads and required a "per rod" amount for measurement, eliminating a "before and after" valuation of the entire parcels for practical purposes. Speculation and conjecture were necessarily involved in a jury verdict which required the determination of just

> "* * * compensation to be made to the owners * * * for the lands * * * taken or injuriously affected * * * with deduction or allowance for the real benefits or advantages which the owners * * * may derive from the construction of the road, * * *." Section 1–26–303, W.S.1977 (supra at footnote 1.)

Reversed and remanded for a new jury trial.

---

**7.** The verdict need not reflect "before and after" valuations, but the "before and after" testimony must be adaptable to the form of verdict.

**8.** There was general testimony to the effect that approximately 5,000 to 8,000 acres were involved, but such was not designated as being the entire area of the parcels or as being "adjacent" to the roads or otherwise.

**9.** The judge replied to the question as follows: "When figuring damages to the lands adjacent to the roadway, if any, you may use any unit of area measurement you wish, but you must convert the result to a per lineal rod amount for each rod of the road."