Ron ELY and ABC Utilities, Inc., a
Wyoming corporation, Appellants
(Defendants),

Paul K. Ely and Delma J. Ely, Sagebrush
Development, Inc., a Wyoming corpora-
tion; Clow Corporation, a Delaware
corporation; Madera Pacific, Inc., a
South Dakota corporation, d/b/a
Knecht Building Supply; and R & P
Rentals, Inc., a Wyoming corporation,
Defendants,

v.

Sharon KIRK, Appellee (Plaintiff).

No. 85–32.

Supreme Court of Wyoming.

Sept. 12, 1985.

708

James W. Owens of Murane & Bostwick, Casper, for appellants.

Thomas E. Lubnau, II, Gillette, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellants appeal from a judgment finding them negligent in the operation of a sewage system by allowing it to back up into the basement of appellee's home on a number of occasions. Appellants contend that negligence was not established at trial, that damages were not properly determined, and that damages should not be assessed in any event against appellant Ron Ely inasmuch as the utility was operated as a corporate entity.

We affirm the judgment as it pertains to the issues on negligence and on Ron Ely's liability, and we reverse on the issue of damages to real property and remand for a trial only on the issue of damages to real property.[1]

Insofar as the issues require us to determine whether or not the evidence is sufficient to sustain the trial court, we assume the evidence in favor of the successful party to be true, disregarding entirely the

---

1. It is proper for us to decide incidental questions on appeal which are bound to arise again in the case. *Rocky Mountain Oil and Gas Association v. State,* Wyo., 645 P.2d 1163, 1167 (1982); *McGuire v. McGuire,* Wyo., 608 P.2d 1278, 1286 (1980); *Chicago and N.W. Ry. Co. v. City of Riverton,* 70 Wyo. 119, 247 P.2d 660, 663 (1952).

evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Pine Creek Canal No. 1 v. Stadler,* Wyo., 685 P.2d 13, 17 (1984); *Anderson v. Bauer,* Wyo., 681 P.2d 1316, 1319 (1984); *Yost v. Harpel Oil Company,* Wyo., 674 P.2d 712, 716 (1983).

## NEGLIGENCE

Appellants are successor owners and operators of the sewage system for Rawhide Village, a subdivision in Campbell County, which was the subject of concern in *Sagebrush Development, Inc. v. Moehrke,* Wyo., 604 P.2d 198 (1979). Appellee owned a home in the subdivision and finished the basement of it into a family room, a large bedroom and a second bathroom. On July 24, 1982, appellee found raw human sewage backing up into the basement with such force as to fountain six inches above the toilet seat. It filled the basement to the level of eight inches. Thereafter, it again backed up into the basement on July 25, 1982, August 11, 1982, August 15, 1982, January 1983, and August 1983. Three of these backups were due to infiltration of storm water into the sewer system; one was caused by power failure in the sewage treatment plant; one was caused by power failure and/or power fluctuations in the sewage treatment plant; and one was caused by failure of an air control valve in the compressor part of the sewer system.

■ Both parties recognize the necessary elements of negligence: Duty or standard of care on the part of the defendant, and a failure to perform the duty, proximately causing damage to plaintiff. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925, 931 (1981); *Danculovich v. Brown,* Wyo., 593 P.2d 187, 195 (1979). The determination of the standard of care or duty is a matter of law and not the province of the jury. *Medlock v. Van Wagner,* Wyo., 625 P.2d 207, 208 (1981); *Maxted v. Pacific Car & Foundry Company,* Wyo., 527 P.2d 832, 835 (1974).

Appellants argue that the duty was not evidenced and, in any event, the incidents were "Acts of God" and therefore were not proximately caused by appellants.

■ The duty or standard of care required of one to avoid risk of injury to another is that which is required of a reasonable person in the same or similar circumstances. *Cervelli v. Graves,* Wyo., 661 P.2d 1032, 1036 (1983); *Vassos v. Roussalis,* Wyo., 625 P.2d 768, 772 (1981). It is:

"'* * * [an] obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.'" (Emphasis in original.) *ABC Builders, Inc. v. Phillips,* supra, 632 P.2d at 930.

■ Appellants complain that the evidence did not contain a showing of Environmental Protection Agency requirements or other standards for operating a sewage disposal system and, thus, appellants' duty relative thereto was not established. A standard of care may be established by administrative regulations, but such may be otherwise established. The Restatement of Torts (Second) § 285 (1965), reads:

"§ 285. How Standard of Conduct is Determined.

"The standard of conduct of a reasonable man may be

"(a) established by a legislative enactment or administrative regulation which so provides, or

"(b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

"(c) established by judicial decision, or

"(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision."

See *Distad v. Cubin,* Wyo., 633 P.2d 167, 171–172 (1981). In *Vassos v. Roussalis,* supra, 625 P.2d at 772, we noted:

"'* * * Some circumstances have acquired particular legal significance which make it possible for the court to fix a more specific standard, * * *'"

and, we gave as examples, owners or occupiers of land, handling and dealing with a dangerous agency, and malpractice.

 There is nothing in the operation of a sewage disposal plant that would require a standard of duty other than is required of a reasonable person in the same or similar circumstances. The duty may be a duty to act or a duty not to act. Failure to comprehend or recognize danger may, in itself, constitute negligence. *Brittain v. Booth*, Wyo., 601 P.2d 532, 535 (1979). We are not here concerned with a single back up of sewage. There was evidence in this case of such backups prior to those listed above. See *Sagebrush Development, Inc. v. Moehrke*, supra. The question is whether or not a reasonable person would take available means to avoid such backups under the circumstances. Would a reasonable man seal the sewer system from storm water? Would he provide a generator to back up power failure? Would he provide surge protectors to maintain steady power? Would he install one-way flow valves to prevent backward flow into residences? Under the circumstances of this case—the repeated backups and the serious nature of the resulting pollution—a reasonable person would take action to make the system effective from the standpoint of accomplishing its purpose, i.e., delivering sewage to the disposal plant and not to the basements of residences. Appellants did not do so.

In *ABC Builders, Inc. v. Phillips*, supra, 632 P.2d at 937, we quoted the following from 57 Am.Jur.2d Negligence § 58:

" 'The probability of injury by one to the legally protected interests of another is the basis for the law's creation of a duty to avoid such injury, and foresight of harm lies at the foundation of the duty to use care and therefore of negligence. The broad test of negligence is what a reasonably prudent person would foresee and would do in the light of this foresight under the circumstances. Negligence is clearly relative in reference to the knowledge of the risk of injury to be apprehended. * * * The most common

test of negligence, therefore, is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming within the range of such acts.' "

The reasonably foreseen consequences of the failure to prevent regular sewer backups into appellee's residence are obvious. Raw human sewage in appellee's basement injured her in the enjoyment of her home, in the cost of removal of the sewage, and in its effect on the value of the property.

Additionally, the contract referred to and quoted from in *Sagebrush Development, Inc. v. Moehrke*, supra, was an exhibit in this case, and appellants had taken on the obligations thereof. The contract required appellants to

" * * * provide at all times for each of the * * * residences * * * sewerage service adequate for safe and sanitary collection, treatment and disposal of all domestic sewage * * *"

and to

"* * * operate and maintain the sewerage system * * * in a manner so as not to pollute the ground, air, or water in, under, or around said areas or subdivisions with improperly or inadequately treated sewage * * *."

 A contract may create a relationship from which arises a duty to exercise care. *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo., 526 P.2d 52, 59 (1974). In this instance, a violation of the contract, itself, occurred. As in *Sagebrush Development, Inc. v. Moehrke*, supra, a review of the record under the standard by which we determine whether or not the evidence is sufficient to sustain the trial court reflects ample grounds to find that appellants did not provide sewage service adequate for safe and sanitary collection, treatment and disposal of the sewage, and that they did not operate and maintain the sewage in a manner so as not to cause pollution with improperly or inadequately treated sewage as required by the contract under which appellee was a third-party beneficiary.

On appeal, we must affirm a judgment if it is sustainable on any legal ground or theory appearing in the record. *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452, 456 (1983); *Agar v. Kysar*, Wyo., 628 P.2d 1350, 1352 (1981); *Wightman v. American National Bank of Wheatland*, Wyo., 610 P.2d 1001, 1003 (1980); *White v. Wheatland Irrigation District*, Wyo., 413 P.2d 252, 257 (1966).

Appellants argued that the injury resulted from an "Act of God" and that they were not responsible for it, wherefore, "the proximate cause element of negligence was never proven." We defined an act of God in *Sky Aviation Corporation v. Colt*, Wyo., 475 P.2d 301, 304 (1970) as any accident, "due directly and exclusively to natural causes without human intervention and which could not have been prevented." And, we there noted that there can be no combination of an act of God and fault of man; and that for the act of God defense to be available, the act of God must be the sole cause of the injury. In *Cox v. Vernieuw*, Wyo., 604 P.2d 1353, 1359 (1980), we said:

"* * * [W]e would expand the issue to the end that we would hold that the Act of God defense should not be applied in a case brought upon a theory of negligence. As our foregoing analysis demonstrates, an Act of God is no more than another way of saying that the defendants were not negligent. While this defense unquestionably has rhetorical glamour, particularly for purposes of arguing a case to the jury, it is our conclusion that better jurisprudence would foreclose the application of the theory in a negligence case. If the defendant must be found non-negligent in order to apply the Act of God defense, and this is the way we have expressed the rule, then the case really ends with the finding of no negligence and any finding with respect to an Act of God is superfluous. * * *"

Since appellants had a duty to prevent the injury to appellee, the violation of that duty together with a breach of the contract to provide safe, sanitary and unpolluted sewer service is obvious from the fact that the backups occurred because of storm water entering the system, power outages and surges, and mechanical failure of the disposal plant. Half of the backups had nothing to do with the weather. Acts of God are obviously not the sole cause of the injury, and the defense is not properly available in this case.

Proximate cause is a question of fact to be determined by the trier of facts unless only one conclusion can be drawn from the evidence. *Caterpillar Tractor Company v. Donahue*, Wyo., 674 P.2d 1276, 1283 (1983); *Dallason v. Buckmeier*, 74 Wyo. 125, 284 P.2d 386, 390 (1955).

"If the clogging of defendant's sewer caused the damage to plaintiffs—and that is undisputed—and if the jury found negligence of the sewer district led to or contributed to the clogging, it would follow as a matter of course that such negligence was a proximate cause of the injury. Or at least, the jury would be entitled to find that such negligence was a proximate cause.

"Here again, it requires no citation of authority for the proposition that the question of proximate cause is for the jury. * * *"

*South Cheyenne Water and Sewer District v. Stundon*, Wyo., 483 P.2d 240, 243 (1971).

The trier of facts in this case found generally for appellee and against the appellants. The court said:

"I find that they were negligent in the operation of this sewage system by allowing the sewage to back up in the basement of the plaintiff on several occasions."

There was evidence in the record to support the finding. In *South Cheyenne Water and Sewer District v. Stundon*, supra, the evidence of negligence consisted of failure to inspect for a faulty manhole ring and from a partially open manhole cover together with failure to prevent such condi-

tions. We held this to be sufficient for the jury to find negligence.

## RON ELY'S LIABILITY

The trial court said:

"I think there's sufficient evidence in the mortgages and otherwise that Mr. Ron Ely does business under several names, there's an intertwining, I think ABC Utilities and Ron Ely are the same."

Whether or not the corporate veil is pierced is a factual determination. *Yost v. Harpel Oil Company,* supra. The mortgages referred to by the trial court are by Ron Ely, in his personal capacity, mortgaging the sewer system to the bank. A purchase agreement was received in evidence which reflected that Sagebrush Development, Inc. and Paul K. Ely and Delma Ely transferred and sold the sewer system to appellant Ron Ely on October 19, 1981. Such evidence reflects that there is no corporate veil to pierce. But if the sewer system and its operation have a corporate shell, these factors, plus the fact that Ron Ely represents to customers, to Campbell County officials, and to others that he is the owner and operator of the system, are sufficient for the factual finding made by the trial court in this respect.

## DAMAGES

Before examining the propriety of the damages allowed by the trial court, we address appellants' contention that testimony by an owner of the property is not, per se, admissible. In *Sagebrush Development, Inc. v. Moehrke,* supra, we noted that the opinion of an owner of property as to value is proper inasmuch as he is presumed to have special knowledge of it, citing *Town of Douglas v. Nielsen,* Wyo., 409 P.2d 240, 242 (1965); *Adams v. Erickson,* 394 F.2d 171, 173 (10th Cir.1968). See *Continental Pipe Line Company v. Irwin Livestock Company,* Wyo., 625 P.2d 214, 217, 25 A.L.R.4th 607 (1981). The owner, however, cannot simply give a figure as an opinion of the amount of damages, which figure cannot be supported on knowledge gained as an incident of ownership, e.g.,

purchase price of it or similar property, attributes good and bad of the particular property, or circumstances in the neighborhood or area having an effect on its value, etc. He need not qualify otherwise as an expert appraiser or as one having special knowledge of general valuations, but the figure given by him must be something more than that for which the property is worth *to him. Energy Transportation Systems, Inc. v. Mackey,* Wyo., 650 P.2d 1152, 1156 (1982), appeal after remand 674 P.2d 744 (1984); *Coronado Oil Company v. Grieves,* Wyo., 642 P.2d 423, 434 (1982). Whether or not a witness has sufficient knowledge or special experience to testify as to his opinion on valuation is within the discretion of the trial court and will be disturbed on appeal only if clearly and prejudicially erroneous and then only in extreme cases. *Herman v. Speed King Manufacturing Company,* Wyo., 675 P.2d 1271, 1278 (1984); *Coronado Oil Company v. Grieves,* supra; *Ferris v. Myers,* Wyo., 625 P.2d 199, 204 (1981).

Opinion evidence usually involves hearsay. Rule 703, W.R.E., provides that:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

And Rule 705, W.R.E., provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

Although the owner of property is not an expert witness in the technical sense, he can give his opinion as having specialized knowledge concerning the property which will be of assistance to the trier of fact. Rule 702, W.R.E., allows one with such

knowledge to testify in the form of an opinion:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■ In this case, the trial was to the court, and the court had the duty to determine the credibility of the witnesses and to weigh the evidence. *Herman v. Speed King Manufacturing Company,* supra; *Crompton v. Bruce,* Wyo., 669 P.2d 930, 933 (1983); *Madrid v. Norton,* Wyo., 596 P.2d 1108, 1117 (1979). The basis for appellee's opinion was the knowledge of purchase price, sales of other property in the subdivision—or the lack thereof, and the condition in which the personal property was left after the backups. Such was sufficient for the manner in which the trial court exercised its discretion in allowing appellee's opinion testimony.

The trial court awarded $977.49 for damage to the personal property in the basement and for miscellaneous expenses during cleanup, $13,000.00 for decrease in value of the house, and $5,700.00 to restore the basement.

■ The evidence to establish the $977.49 award could have been more explicit, but it was sufficient under the circumstances of this case. It consisted of appellee's testimony supported by Exhibit 4, which listed the personal property, date of acquisition, whether acquired new or used, the price paid, the value ascribed before the backup and that ascribed afterwards with resulting loss. The trial court awarded the amount testified to and contained in the exhibit. A break down of the allowed expenses attributed $282.49 to (1) plugging off the bathroom, taking up the carpet, rent of a wet-dry vacuum cleaner and payment to "Chandler/Jankin" for labor; (2) $50.00 for cleaning the upstairs living room carpet; and (3) $370.00 for loss of meat in a freezer, two fans, bathroom supplies and storage room material. On each of these items, the valuation was based upon the "price paid" and a before value was listed with an after value of zero. The "before and after" rule for determining damages is applicable only when there is a partial injury to the property. If the property is completely destroyed or taken in entirety by eminent domain, the "before and after" rule is unnecessary. The market value of the property is the measure of damages. *Energy Transportation Systems, Inc. v. Mackey,* supra; *Continental Pipe Line Company v. Irwin Livestock Company,* supra; *Belle Fourche Pipeline Company v. Elmore Livestock Company,* Wyo., 669 P.2d 505, 511 (1983); *Rocky Mountain Packing Co. v. Branney,* Wyo., 393 P.2d 131, 134 (1964); *Redwine v. Fitzhugh,* 78 Wyo. 407, 329 P.2d 257, 263, 72 A.L.R.2d 664 (1958). Although a before and after valuation was listed on the exhibit, it is obvious that the loss was determined by market value since the property was considered completely destroyed.

Appellee's opinion was based upon the amount paid for cleanup expenses and for the articles destroyed. Obviously, the type of property involved (electric fan motors, toilet paper, frozen meat, etc.) would have no value after being in human sewage. The purchase price of such articles and their present worth are within that for which the owner would have knowledge. The testimony was not founded upon a special value to the owner.

The balance included in the $977.49 allowed by the court for damage to personal property was $275.00 for injury to couch and chairs. Appellee's exhibit reflected the new value to be $500.00, the value before the backup to be $200.00 and the value after the backup to be $25.00. The amount allowed by the court is obviously a mistake in computation. Two hundred dollars less $25.00 is $175.00 and not $275.00. The court noted in its discussion of damages to personal property that its "arithmetic is subject to correction." Accordingly, we can affirm the amount of judgment for damage to personal property reduced by

the $100.00 error in arithmetic. The couch and chairs are the only items of personal property listed on the exhibit which were contended to have some value after the backup. The only other item of personal property on the exhibit is "damage to washer/dryer" for which appellee listed the amount of loss to be questionable and for which appellee was not awarded damages by the court.

In reviewing the $977.49 award for damage to personal property under the standard set out above, we cannot say that there was insufficient evidence to support the court's finding (except for the $100.00 error in arithmetic) or that such evidence was improperly admitted in this trial to the court. Accordingly, we affirm the award of $877.49 ($977.49 less arithmetic correction of $100.00) for damage to personal property.

The $13,000.00 allowed by the court for decrease in the value of the house and the $5,700.00 allowed to restore the basement are not double recovery of damages in a single incident as contended by appellants, but the method used to measure these damages is not that normally used and approved by this court. Further, should we want to approve such method[2], we would be unable to determine from the record in this case any evidence upon which the figure of $5,700.00 was based.

Although appellee placed a market value for the property before the backups at $66,000.00 and after the backups at $48,000.00, with a loss of $18,000.00[3], the trial court obviously accepted the appraisal made by witness Williams. His written appraisal was admitted into evidence, and he testified thereto. He appraised the property with a basement *of full utility without a sewer problem* as having a fair market value of $61,000.00, and he appraised it without any basement at all at $48,000.00. The difference is $13,000.00, the amount allowed by the court.

Having valued the house as one without a basement, the trial court recognized that the house had a value much less than another house without a basement since it *had* a basement which was a detriment to it. The trial court said:

"Now, I understand the testimony of the expert witness that this house would have to be sold the same as a house without a basement, and that lowered it by $13,000. If it were left in the shape and condition it is now it would even be worse than a house without a basement. It's a house with a smelly basement, it's unsightly, and it has to be repaired."

The court then allowed $5,700.00 for the additional injury.

As stated, even should we accept the court's method of computing damages, there was no evidence to support the figure of $5,700.00 or any other figure representing the difference in value between a house in which living is over a basement containing sewage on the one hand, and a house without a basement on the other hand—other than evidence that the house with a sewage filled basement has no value at all; and the trial court's figure of $5,700.00 was obviously not an adjustment from the "no value at all" testimony.[4]

Finally, for the purpose reflected in footnote 1, we consider appellants' contention that witness Williams' appraisal should not

---

2. "* * * [T]here are so many different situations possible that we do not think the before-and-after rule should be rigidly applied to the exclusion of all other considerations. * * *" *Wheatland Irrigation District v. McGuire*, Wyo., 562 P.2d 287, 299 (1977).

3. Other values placed in evidence reflected purchase price of $47,000.00 in 1979; cost to finish basement into family room, bedroom and bath, $12,000.00 financed partly by a second mortgage of $8,000.00 requiring monthly payments of $236.46; cost of carpet, $1,600.00; owner's opinion on loss of use of basement since July 24, 1982, at mortgage monthly payments of $236.46; and "basic estimate" for restoring basement, $4,100.00.

4. Appellee's Exhibit 4 reflected a loss of use figure at $236.46 per month (the amount of payment on the loan obtained to finish the basement originally) for loss of use. If the court had allowed it, double damages would have resulted since loss of use is equivalent to a house without a basement.

have been considered since it purported to establish the market value as of January 4, 1984, a time not immediately before and after the backups, i.e., July 1982 through August 1983, as required by the "before and after" rule. It is unusual that it is appellants who are contending that the court erred in not using the times immediately after the incidents.[5] If the trial court had done so, the testimony placed no value at all on the property immediately after the injuries, and the judgment against appellants would have been much larger. Appellee testified:

> "A That if I need or want to sell my home there is no way I could sell it. And the homes out there right now that have been for sale for many, many months are still for sale.

> \* \* \* \* \* \*

> \* \* \* \* \* \*

> "Q And why is it, in your opinion as the owner of the property, that people are reluctant to buy in Rawhide Village?
> "A Well, with all the publicity about the sewer problems, and now the rate increase that they're trying to get out there, I just don't think people are going to buy out there."

Witness Williams, whose written appraisal was received into evidence reflecting a determination of fair market value as of January 4, 1984, testified that:

> "A \* \* \* [T]he actual market of somebody going in and looking at this house and knowing there was sewage backups in it would probably eliminate the saleability of the house.

> \* \* \* \* \* \*

> "Q And what would be the impact upon the value of this home of exposing the defects from which it suffers in terms of value?
> "A No sale."

And it is only common sense that the market value of a house immediately after its sewer backed up and when there was eight inches of human sewage in the basement would be almost nothing.

In any event, the time at which the before and after market value should be fixed will again be an issue in the retrial of damages in this case. We have already noted that the before and after rule is applicable only when the damage is partial. If the real property was reduced to no value at all, it should be valued by ascertaining the market value as of the time immediately before the destruction. This is not probable inasmuch as the land should have some value even if the house is not usable. The house itself should have some salvage value. Accordingly, the real property should be valued on the "before and after" basis as of the time it was partially damaged.

The question, then, is when was it partially damaged? Each backup or series of backups, as the court may determine, results from a negligent act. The testimony as to value would be based on the time immediately before and after each backup. Obviously, a single backup may have an after value greater than that which follows a series of backups from which the bad reputation becomes more widespread. An example which might be evidence of valuations is: For backup number 1, before $100,000.00, and after $90,000.00. For backup number 2, before $93,000.00 (after value of number 1 considered together with inflation, depreciation, improvements, etc.) and after value of $77,000.00. For backup number 3, before $65,000.00 and after value of $35,000.00. If the lawsuit is not instituted until after the third backup, the appraisal would substantiate all of these figures.

The proper "before and after" valuations were not here used, and the lack of evidentiary basis for the $5,700.00 figure used by the trial court precludes us from considering the alternate method of valuation here undertaken.

---

**5.** This is particularly true since appellants claim the sewage system was completely renovated in the fall of 1983 and the problem corrected.

Accordingly, we affirm the decision of the trial court as it pertains to liability and as it pertains to damages to personal property after decreasing the same $100.00 for the error in arithmetic, and we reverse the decision as it pertains to damages to the real property, remanding the case for a new trial on such issue.

ROSE, Justice, specially concurring.

I concur in the disposition of this appeal by the majority with respect to the proof of appellants' negligence, the personal liability of Ron Ely, and the propriety of the damages award. I cannot agree, however, that the Wyoming Rules of Evidence concerning expert testimony govern the valuation testimony of a property owner who qualifies to give an opinion solely by reason of his ownership of the property evaluated. In my judgment, Rule 701, W.R.E. controls the receipt of opinion testimony from a property owner who lacks the specialized knowledge of an expert:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

In *Weathers v. State*, Wyo., 652 P.2d 970 (1982), we reviewed the law pertaining to opinion testimony by a property owner and held that the owner's familiarity with the property permits him to give an opinion as to its value even though he may not possess sufficient knowledge or skill to testify as an expert on the subject:

"This court, in a long line of cases, has adopted that generally accepted view that owners are presumed to have a special knowledge of the value of their property and are qualified to express their opinion concerning it. *Sagebrush Devel-*

*opment, Inc. v. Moehrke*, Wyo., 604 P.2d 198 (1979); *Town of Douglas v. Nielsen*, Wyo., 409 P.2d 240 (1965); *Blessing v. Pittman*, 70 Wyo. 416, 251 P.2d 243 (1952); *Shikany v. Salt Creek Trans. Co.*, 48 Wyo. 190, 45 P.2d 645 (1935). In *Shikany*, id., a case where the issue of competency was similar to the one before us, this court, after an exhaustive discussion of the policy behind allowing such opinion evidence, concluded that the owner of a chattel could testify as to its value without demonstrating special expertise. * * * Therefore, an owner can testify as to his opinion of market value without having a particular expertise; the weight given to such testimony is left to the jury." 652 P.2d at 973.

Accordingly, the criteria established by Rule 701 govern the admissibility of a property owner's valuation testimony. Such testimony must be based on the owner's perceptions of the property rather than on hearsay or other inadmissible evidence which may support the opinion testimony of an expert witness.[1] This condition does not unduly restrict the admissibility of lay opinion testimony, however, since trial courts are directed to construe Rule 701 liberally to permit such testimony. *Brockett v. Prater*, Wyo., 675 P.2d 638 (1984); *McCabe v. R.A. Manning Construction Co., Inc.*, Wyo., 674 P.2d 699 (1983). Gaps in the lay witness' knowledge or understanding of the subject go to the weight to be accorded the testimony, not to its admissibility. *Brockett v. Prater*, supra.

Given the nature of valuation testimony offered by a property owner and the distinctions made by the Rules of Evidence with respect to lay and expert opinion testimony, the property owner should be treated as a lay witness whose opinions, to be admissible, must assist the trier of fact and derive from the witness' perceptions of the property, including its purchase price. In the case at bar, appellee's opinions of the

---

1. Rule 703, W.R.E., pertains to expert opinion testimony and provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

value of her house and personal property were based primarily on her knowledge of their purchase price and condition. Her testimony based on incompetent evidence has been disregarded by this court in reversing the judgment pertaining to damages to real property. Since the court's decision does not depend on a conclusion that the property owner qualifies as an expert witness, I join in the disposition of this appeal.