2002 WY 115

**Robert H. ROBERTS and Cinta Roberts, Appellants (Plaintiffs),**

v.

**The ESTATE OF Steven Charles RANDALL, deceased, Appellee (Defendant).**

**No. 00–77.**

Supreme Court of Wyoming.

July 26, 2002.*

---

* This case was originally assigned to Justice Thomas on November 17, 2000, for the rendering of a proffered majority opinion. The case was reassigned to Justice Golden on February 5, 2001.

Mel C. Orchard, III, of Meyer and Williams, P.C., Jackson, Wyoming, Representing Appellant.

S.B. Freeman, III, of Bormuth Freeman & Stinson, LC, Cody, Wyoming, Representing Appellee.

Before LEHMAN ** and GOLDEN, JJ., and SPANGLER, D.J.***

GOLDEN, Justice.

[¶ 1] This appeal primarily presents the issue whether a jury properly considered violations of certain motor vehicle statutes as evidence of negligence by persons operating

** Chief Justice at time of oral argument.

*** Justice Kite recused herself from this case following oral argument

snowmobiles. After the snowmobiles operated by Appellant Robert H. Roberts and Steven Charles Randall collided, killing Randall and partially paralyzing Roberts, Roberts and his wife Cinta (the Robertses) brought suit against Randall's estate (Estate). At trial, the district court instructed the jury that various statutes from Wyo. Stat. Ann. §§ 31–5–101 through 31–5–1507, Wyoming's Uniform Act Regulating Traffic on Highways (Chapter Five), were applicable in determining the negligence, if any, of the two snowmobile operators. The jury returned a verdict finding that Roberts was seventy-four percent at fault and Randall was twenty-six percent at fault. The Robertses contend that motor vehicle statutes are not applicable to snowmobile operation and the jury instructions constituted errors entitling them to a new trial. The Robertses also contend that they were entitled to a jury instruction on the sudden emergency doctrine and the trial court's refusal to provide that instruction was error.

[¶ 2] We hold that Wyo. Stat. Ann. §§ 31–5–101 through 1507 (Chapter Five) do apply, and the district court's jury instructions properly instructed on the applicable law. We hold that the sudden emergency doctrine survived enactment of the comparative negligence statutes but did not apply based on the evidence. We affirm the order of judgment on the verdict.

## ISSUES

[¶ 3] The Robertses presents these issues for our review:

A. The trial court improperly instructed the jury regarding the use of vehicles on Wyoming highways in a case involving snowmobiles being operated on a snowmobile trail.

B. The trial court failed to instruct the jury on the sudden emergency doctrine in the face of its decision to instruct the jury regarding the application of Wyoming statutes.

C. The trial court failed to instruct the jury on Appellants' "theory of the case" and "concurrent cause," and then proceeded to give an inference of negligence instruction based upon Appellee's assertions that Appellants violated the Motor Vehicle Regulations, while continuing to refuse to instruct the jury on sudden emergency which would have justified Appellants' conduct even if such conduct violated the Motor Vehicle Regulations.

D. The trial court abused its discretion when it refused to grant Appellants' motion for new trial or in the alternative, refused to amend the jury's apportionment of fault to reflect that the Appellant was not negligent as a matter of law.

The Estate states that the issues are:

1. Whether this Court lacks jurisdiction due to an untimely filing of a notice of appeal by the Appellants?

2. Whether the trial court properly denied Appellants' "Motion for a New Trial, for Judgment as a Matter of Law, or, in the Alternative for Amendment of the Jury Verdict"?

3. Whether the trial court properly refused to give the Appellants' theory of the case instruction?

4. Whether the trial court properly refused to give the Appellants' concurrent cause instruction?

## FACTS

[¶ 4] The Greys River area on the Wyoming Range in western Wyoming is a popular recreational area. Greys River Road in the Bridger–Teton National Forest is a national forest service road (No. 10138) that is accessible for wheeled traffic in the summer but closed to that traffic during winter. Although Greys River Road is not plowed during winter, it is groomed for a snowmobile trail and frequently used by snowmobilers.

[¶ 5] On February 7, 1998, two different parties of snowmobilers departed east from Alpine, Wyoming, to snowmobile on Greys River Road. The Randall party, a group of five men, left Alpine about ten o'clock that morning and began returning towards Alpine that afternoon. The Roberts party left Alpine later that day and traveled away from Alpine. The Roberts party included Roberts, his wife and their two children, and Shane Brown, Brown's wife and Brown's two

children. Each person had his or her own snowmobile. Roberts cautioned everyone in his party that because they were getting a late start, other riders would be coming out, and because the weather was not ideal, other riders would not be expecting people coming up the trail that late in the day. The wives and children departed first, and Roberts and Brown followed them up the trail.

[¶ 6] Soon, however, Roberts and Brown took the lead and raced each other. At the time of the accident, Randall and Roberts were traveling towards each other. Roberts was closely following Brown, who was positioned to the right of the trail. Roberts testified that he was positioned fifty feet behind and to the left of Brown's snowmobile because it was spraying snow in a roostertail behind it. Brown testified that at the crest of a hill an oncoming Randall passed dangerously close to him. Roberts testified that he saw Randall on Roberts' side of the trail and Roberts swerved to his own left; however, Randall also veered in that direction, and the two snowmobiles collided. Each was thrown off, and the two collided in mid-air. Randall was killed; Roberts was seriously injured.

[¶ 7] The trial focused on disputed evidence of each snowmobile's position immediately before the collision with each claiming that the other had not safely stayed to the right of the center of the trail. Roberts claimed that although he was close to the trail's center, he was proceeding to his right of the trail's center until Randall's position left of center forced him to swerve left. He explained that he moved left instead of right because he had just noted on his right a

steep drop-off down an embankment to a river. The Estate claimed that Roberts was left of center the entire time despite cresting a hill and this position caused him to collide with Randall. Evidence at trial established that an ungroomed turnout was immediately to Roberts' right, but Roberts failed to see it.

[¶ 8] At trial, jury instructions numbered twelve and thirteen instructed the jury that every person operating a vehicle upon a roadway should do so with reasonable control and while keeping a proper lookout for other persons using the roadway. Instruction number fourteen advised that violation of a statute is evidence of negligence. The jury was then instructed based upon Chapter Five. In this regard, instructions numbered fifteen through eighteen stated:

### Jury Instruction No. 15

YOU ARE INSTRUCTED that Wyoming Statute § 31–5–202 [1] provides that:

"Drivers of vehicles proceeding in oppose [sic] directions shall pass each other to the right and upon roadways having width for not more than one (1) line of traffic in each direction each driver shall give to the other at lease [sic] one-half (1/2) of the main-traveled portion of the roadway as nearly as possible."

### Jury Instruction No. 16

YOU ARE INSTRUCTED that Wyoming Statute § 31–5–205 [2] provides in part that no vehicle shall be driven on the left side of the roadway when approaching or upon the crest of a grade or a curve in the

---

1. § 31–5–202. Passing of vehicle approaching from opposite direction.

Drivers of vehicles proceeding in opposite directions shall pass each other to the right and upon roadways having width for not more than one (1) line of traffic in each direction each driver shall give to the other at least one-half (1/2) of the main-traveled portion of the roadway as nearly as possible.

2. § 31–5–205. Additional limitations on driving on the left; exceptions.

(a) No vehicle shall be driven on the left side of the roadway under the following conditions:

(i) When approaching or upon the crest of a grade or a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event anoth-

er vehicle might approach from the opposite direction;

(ii) When approaching within one hundred (100) feel of or traversing any intersection or railroad grade crossing unless otherwise indicated by official traffic-control devices;

(iii) When the view is obstructed upon approaching within one hundred (100) feet of any bridge, viaduct or tunnel.

(b) Subsection (a) of this section does not apply:

(i) Upon a one-way roadway;

(ii) Under the conditions described in W.S. 31–5–201(a)(ii);

(iii) To the driver of a vehicle turning left into or from an alley, private road or driveway.

highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction.

### Jury Instruction No. 17

YOU ARE INSTRUCTED that Wyoming Statute § 31–5–210 [3] provides in part that the driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

### Jury Instruction No. 18

YOU ARE INSTRUCTED that Wyoming Statute § 31–5–301 [4] provides in part that no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

[¶ 9] The Robertses and the Estate each submitted a proposed jury instruction on the sudden emergency doctrine. At the jury instruction conference, the district court rejected both of those instructions, deciding that both misstated the applicable rule of law. At that time, the attorney for the Robertses stated that he withdrew his proposed instruction on the sudden emergency doctrine.

[¶ 10] The district court acknowledged that it had a duty to draft a proper instruction if both the law and the evidence required

---

**3.** § 31–5–210. Following too closely.

(a) The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

(b) The driver of any vehicle when traveling upon a roadway outside of a business or residence district, and which is following another vehicle shall, whenever conditions permit, leave sufficient space so that an overtaking vehicle may enter and occupy the space without danger.

(c) Motor vehicles being driven upon any roadway outside of a business or residence district in a caravan or motorcade whether or not towing other vehicles shall be so operated as to allow sufficient space between each vehicle or combination of vehicles so as to enable any other vehicle to enter and occupy such space without danger. This provision shall not apply to funeral processions.

**4.** § 31–5–301. Maximum speed limits.

(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

(b) Except when a special hazard exists that requires lower speed for compliance with subsection (a) of this section, the limits specified in this subsection or established as otherwise authorized shall be maximum lawful speeds and no person shall drive a vehicle on a highway at a speed in excess of maximum limits:

(i) Twenty (20) miles per hour when passing a school building, or the grounds thereof, or a school crossing if appropriate signs giving notice of that limit are erected;

(ii) Thirty (30) miles per hour in any urban district;

(iii) Seventy-five (75) miles per hour on interstate highways. Nothing in this paragraph shall be construed to:

(A) Affect the authority of the superintendent to otherwise designate lower maximum speed limits on interstate highways in accordance with other laws; or

(B) Authorize noncompliance with posted speed limits on interstate highways.

(iv) Sixty-five (65) miles per hour in other locations;

(v) Repealed by Laws 1997, ch. 61, § 2.

(c) The maximum speed limits set forth in this section may be altered as authorized in W.S. 31–5–302 and 31–5–303.

(d) Speeding violations of up to eighty (80) miles per hour under W.S. 31–5–301(b)(iii) or up to seventy (70) miles per hour under W.S. 31–5–301(b)(iv), except violations received while operating a commercial motor vehicle as defined by W.S. 31–7–102(a)(viii), shall not be made a part of the abstracts or records kept by the department of transportation pursuant to W.S. 31–5–1214 or 31–7–120.

it, but upon consideration, found that the sudden emergency doctrine is no longer viable under Wyoming's comparative negligence statutes. The jury returned a verdict generally in favor of the Estate. The Robertses filed motions for a new trial that were denied, and this appeal followed.

## DISCUSSION

*Standard of Review*

[¶ 11] The issues presented require that we determine whether Chapter Five applies to snowmobile operation and whether enactment of the comparative negligence statutes precludes application of the sudden emergency doctrine. Statutory interpretation is a question of law; therefore, our standard of review is de novo. *Sellers v. Dooley Oil Transport,* 2001 WY 44, ¶ 10, 22 P.3d 307, ¶ 10 (Wyo.2001). If the conclusion of law is in accordance with the law, we affirm it; if it is not, we correct it. We try to interpret statutes in accordance with the legislature's intent. We begin by making an. inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia. *Id.* Statutes should be construed in pari materia with other statutes to which they relate, and courts should strive to give meaningful effect to the purpose of these statutes. *Corkill v. Knowles,* 955 P.2d 438, 445 (Wyo.1998).

*Chapter Five*

[¶ 12] The Act governing motor vehicles, Title 31, consists of eighteen chapters. In the first article of Chapter One, the words "this act" are defined to mean Wyo. Stat. Ann. §§ 31–1–101 through 31–4–104. Wyo. Stat. Ann. § 31–1–101(a)(xxii) (LexisNexis 2001).[5] Accordingly, the definitions in § 31–1–101 apply only to Chapters One through Four of Title 31, but not to Chapter Five. Title 31, Chapter Five contains fifteen arti-

cles and states the short title of "this act" to be "Uniform Act Regulating Traffic on Highways." Wyo. Stat. Ann. § 31–5–101 (LexisNexis 2001). The meaning of "this act" is defined as "W.S. § 31–5–101 through 31–5–1507." Wyo. Stat. Ann. § 31–5–102(a)(lix) (LexisNexis 2001).

[¶ 13] In part, Chapter Five addresses the statutory traffic code and "rules of the road." *See Johnston v. Wortham Machinery Co.,* 60 Wyo. 301, 309, 151 P.2d 89, 91 (Wyo. 1944). It defines motor vehicle as "every vehicle which is self-propelled except vehicles moved solely by human power and golf carts ...." Wyo. Stat. Ann. § 31–5–102(a)(xxiv) (LexisNexis 2001). A snowmobile is defined as "any mechanically driven **vehicle** of a type which utilizes sleet type runners, or skis or any endless belt tread or combination of these, designed primarily for operation over snow." Wyo. Stat. Ann. § 31–5–102(a)(xlv) (LexisNexis 2001) (emphasis added). Chapter Five provides that "[t]he provisions of this act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways" subject to certain exceptions not applicable here. Wyo. Stat. Ann. § 31–5–103 (LexisNexis 2001). Chapter Five's many definitions do not provide a single definition of highway, but define "controlled access highways," "laned roadway," "roadway," "street or highway" and "through highway." Wyo. Stat. Ann. §§ 31–5–102(a)(vii); (xviii); (xl); (xlix); (li) (LexisNexis 2001). Article Two of Chapter Five provides generally for the operation of vehicles. Wyo. Stat. Ann. §§ 31–5–201 through 235 (LexisNexis 2001). Specific regulations for certain types of conveyances and drivers have been provided and state that those persons riding bicycles, animals or driving animal-drawn vehicles are granted all the rights and are subject to all of the duties applicable to the driver of a vehicle by the act except as to those provisions which by their very nature can have no application. Wyo. Stat. Ann. §§ 31–5–107, –702 (LexisNexis 2001). Other provisions supply special regulations for the operation of public vehicles, emergency vehicles, motorcycles, pedestrian vehicles, off-road recreational ve-

---

**5.** · Unless otherwise indicated, the statutes in effect at the time of the accident have not been amended.

hicles when operated on public streets or highways, and bicycles. Wyo. Stat. Ann. §§ 31–5–105, –106, –115, 124, –701–06 (Lexis-Nexis 2001).

[¶ 14] Article Eight applies to snowmobiles and contains only one provision, § 31–5–801. The subsections of § 801 govern snowmobile operations upon Wyoming roads and highways. That statute provides:

(a) Snowmobiles may be operated upon the highways of Wyoming subject to the following conditions:

(i) Snowmobiles may be operated within the right-of-way but not on the main traveled roadway except as provided hereafter;

(ii) Crossings of main-traveled roadways shall be made at right angles to the roadway or as nearly so as practicable, but in any case yielding the right-of-way to all traffic in the main-traveled roadway;

(iii) Snowmobiles may be operated on the highways within the cities and towns pursuant to ordinance;

**(iv) Snowmobiles may be operated on the main-traveled roadway when the highway is closed to wheeled vehicular traffic or subject to approval of the state highway department, upon a designated and posted portion of a state roadway within the boundaries of a national park;**

(v) If allowed by the county commissioners, snowmobiles may be operated on a designated and posted portion of a county roadway.

Wyo. Stat. Ann. § 31–5–801 (LexisNexis 2001) (emphasis added).

[¶ 15] Under subsection (a)(iv) permitting snowmobile operation on highways closed to wheeled vehicular traffic, Wyoming, through its Department of State Parks and Cultural Resources/Division of State Parks and Historic Sites and through cooperation agreements with the U.S. Forest Service, has developed extensive snowmobile trails across the state and divided the state into eleven snowmobile areas. The Wyoming Range snowmobile area covers the southwest area of the state and to its north are snowmobile areas in the Continental Divide Region, the Grand Teton National Park, and the Yellowstone National Park. When not closed during winter, Greys River Road is also known as Forest Service Road 10138; however, during winter it is closed to wheeled traffic and is a trail in the Wyoming Range snowmobile area. Generally, the Greys River Road snowmobile trail travels east of Alpine for some distance and then diverts southerly. The Wyoming Range trail system is maintained through efforts of the Wyoming Department of State Parks and Cultural Resources/Division of State Parks and Historic Sites, the U.S. Forest Service, and local snowmobile clubs.

[¶ 16] The Robertses contend that the Legislature did not intend that Chapter Five's rules of the road should apply to a groomed snowmobile trail. They base their assertion on the definitions found in § 31–1–101 which, as we have already discussed, differ from the definitions found in § 31–5–102. Because the definitions of § 31–1–101 apply only to Chapters One through Four, the legislative intent concerning snowmobiles is ascertainable by the Legislature's express inclusion of snowmobiles in Chapter Five's definitions and the specific reference to snowmobiles in Article Eight. § 31–5–102(a)(xlv); § 31–5–801. Plainly, the Legislature considered snowmobiles a vehicle for purposes of Chapter Five and its articles, including Article Two. This trial presented the issue whether the snowmobiles had been operated negligently. The trial court determined that Article Two's provisions generally governing the operation of a vehicle were applicable and instructed the jury accordingly. We agree with the trial court's determination that Article Two's "rules of the road" provisions apply to snowmobile operations as well as other articles of Chapter Five. Accordingly, we hold that Chapter Five, Article Eight, authorizes the State to allow snowmobile operation on the Greys River Road snowmobile trail, and further, those snowmobiles operating on the snowmobile trail are subject to the applicable statutory provisions of Chapter Five.

*Sudden Emergency Doctrine*

[¶ 17] Both parties submitted instructions on the sudden emergency doctrine that were rejected by the trial court for misstating the law. The trial court acknowledged that it had a duty to fashion its own instruction if necessary, but decided that because of the enactment of comparative fault, the sudden emergency doctrine is no longer viable in Wyoming. The Estate does not cross-appeal, and although the Robertses eventually withdrew the instruction, they challenge the trial court's legal ruling on appeal. We have previously held that withdrawal of an instruction fails to preserve that issue for appeal and review must be for plain error. *Triton Coal Co., Inc. v. Mobil Coal Producing, Inc.,* 800 P.2d 505, 511 (Wyo. 1990). We consider four factors before applying the plain error doctrine: whether (1) the record reflects clear and unequivocally the fact complained of; (2) the facts prove a transgression of a clear rule of law; (3) the error affects a substantial right of the accused; and (4) the defendant has been materially prejudiced by that violation. *Dellapenta v. Dellapenta,* 838 P.2d 1153, 1164 (Wyo. 1992).

[¶ 18] We have ruled that the comparative fault statutes have eliminated certain rules absolutely barring recovery upon a finding that the plaintiff had been negligent. *Stephenson v. Pacific Power & Light Co.,* 779 P.2d 1169, 1180 (Wyo.1989) ("Gone are the days when a scintilla of negligence by the plaintiff will bar recovery."). Before the enactment of the comparative negligence statute, Wyo. Stat. Ann. § 1–1–109, contributory negligence, assumption of risk, and the obvious danger rule operated as absolute defenses to a negligence action. *Id.* at 1179; *Barnette v. Doyle,* 622 P.2d 1349, 1361 (Wyo. 1981); *Brittain v. Booth,* 601 P.2d 532, 534 (Wyo.1979). With the advent of comparative negligence legislation, however, these contributory negligence rules became a basis for an apportionment of fault and no longer operated as a complete bar to recovery. *Stephenson* at 1179; *Barnette* at 1361; *Brittain* at 534. "Thus, if appellant was negligent, it was for the jury to measure the relative degrees of fault." *Stephenson* at 1179.

[¶ 19] In contrast, we have recognized that the existence of an emergency is not an affirmative defense, but it is one of the circumstances to be considered by the finder of fact in determining whether a party has acted negligently. *Sannes v. Olds,* 458 P.2d 729, 731 (Wyo.1969). "[W]hen one must act suddenly in the face of imminent danger he is not required to use the same degree of care as at other times, but this rule is applicable only when the person claiming its advantage has been placed in a position of sudden peril without his own fault." *Id.* at 732. The emergency rule does not mean that any different standard is to be applied: the conduct required is still that of a reasonable person under the circumstances as they would appear to one who was using proper care, and the emergency is only one of the circumstances. *Eslinger v. Ringsby Truck Lines, Inc.,* 195 Mont. 292, 636 P.2d 254, 259 (1981). Although the Montana Supreme Court disfavors the instruction, it continued to permit a trial court's giving an emergency instruction after the adoption of the comparative negligence standard. *Id.* at 260. That court has long held, however, that some "emergencies" must be anticipated and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. *Kudrna v. Comet Corp.,* 175 Mont. 29, 572 P.2d 183, 191 (1977). After adopting comparative negligence principles, the Montana Supreme Court continued its cautious application of the sudden emergency doctrine, ruling its use in the ordinary automobile accident case would be unnecessary and confusing, and the ordinary rules of negligence are applicable and afford a sufficient gauge by which to appraise conduct. *Eslinger* at 260. The Montana Court developed the following test to determine if sufficient evidence warrants the instruction:

1) the claimed emergency actually or apparently existed;

2) the perilous situation was not created or contributed to by the person confronted;

3) alternative courses of action in meeting the emergency were open to such person or there was an opportunity to take some action to avert the threatened casualty; and

4) the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or similar situation.

*Id.* at 259. Giving the instruction when the evidence did not support giving it would be a comment on the evidence that would confuse and potentially prejudice the jury. *Ewing v. Esterholt,* 210 Mont. 367, 684 P.2d 1053, 1059 (1984).

[¶ 20] For our part, we have considered issues arising from this doctrine both before enactment of the comparative negligence statutes and after, reviewing it most recently in *Haderlie v. Sondgeroth,* 866 P.2d 703, 718 (Wyo.1993). Although comparative negligence principles applied at trial, our *Haderlie* opinion did not consider whether the doctrine was viable in a comparative negligence action. In *Haderlie,* we considered the following "sudden emergency" instruction:

> Where a person finds himself or herself confronted with a sudden emergency, which was not brought on about his or her own negligence or want of care, such person has a legal right to do what appears to him or her at the time he or she should do, so long as he or she acts in a reasonable manner as any other person would have done under like or similar circumstances, to avoid an injury; and if he or she does so act, he or she will not be deemed to have been negligent even though it might afterwards be apparent that some other course of action would have been safer.

*Id.* In *Haderlie,* appellee James Sondgeroth sought to recover personal injury damages resulting from his automobile striking a horse that had earlier been struck and killed by appellant Haderlie. *Id.* at 706–07. The trial court refused the sudden emergency instruction and reasoned that:

> This Court does not deem that there has been any evidence of a sudden emergency. That's more applicable to a driver's suddenly finding someone in his own lane, or a spot of ice that he's onto, or something very immediate. In this case, there was an attenuation of approximately ten minutes of time from the time that Mr. Haderlie struck the horse until the Plaintiff

struck the horse; and the Court does not deem that to be a sudden emergency.

*Id.* at 718. We determined that the instruction was properly refused as unsupported by the evidence. *Id.* When evidence of an emergency has existed, we have said that it was the province of the finder-of-fact to determine from all the circumstances disclosed by the record whether the emergency had been created by the person claiming the benefit of the rule, and by reasonable implication we held the existence or nonexistence of an emergency to be thus determined. *Sannes,* 458 P.2d at 732.

[¶ 21] We discussed similar sudden-emergency instructions in *Holly Sugar Corp. v. Perez,* 508 P.2d 595, 601 (Wyo.1973), and *Gerdom v. Gerdom,* 444 P.2d 34, 35–36 (Wyo. 1968), in light of the particular facts of each. In *Perez,* we found that without evidence demonstrating that some unknown and sudden condition caused an accident, it was proper to refuse an instruction on sudden emergency. 508 P.2d at 601. However, in *Gerdom,* we determined that the instruction was proper where a jury could determine that a driver pulling a trailer was confronted with a sudden emergency when he hit 1000 feet of ice causing the trailer to begin sliding, and the jury also might have found this condition was unforeseen and without negligence on the part of that driver. 444 P.2d at 36.

[¶ 22] We have addressed facts involving moving left of center instead of to the right to avoid a head-on collision in *Dallason v. Buckmeier,* 74 Wyo. 125, 284 P.2d 386 (1955). There, we recognized that the general principle states:

> Statutes, ordinances or other regulations or rules requiring motor vehicles to be driven on the right-hand side of the highway or street are not intended to and do not, prohibit a motorist from driving to the left of the center of the highway or street in trying, in an emergency, to avoid an accident. In case of an emergency it may be not only excusable but perfectly proper for an automobilist to turn to the left side of the road in order to escape from danger or avoid injuring others.

*Id.* at 135, 284 P.2d at 390 (quoting 60 C.J.S., *Motor Vehicles,* § 282, at 660). We also recognized that generally the law permits traveling on the wrong side of the road; however, if visibility is poor, special care is required to stay on the right side of the road. Thus, we noted:

> "Where there is a clear view, it is not negligence to drive in the center of the highway, or even on the opposite side; but, in rounding a curve or approaching the summit of a hill, where the view is shortened, it is the driver's duty to keep on the right side." The Annotation in 57 A.L.R. cites cases from seven jurisdictions in which the foregoing rule was applied when the parties involved were rounding a curve. In fact the rule is attempted to be prescribed by § 60–505, W.C.S.1945, stating that a traveler must turn to the right "when approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed."

*Id.* at 132, 284 P.2d at 388 (quoting partially from *Bloom v. Bailey,* 292 Pa. 348, 141 A. 150, 152 (Pa 1928)). Following a detailed discussion of the circumstances of the collision, we affirmed the trial court's judgment that a tanker truck rounding a curve partially in the wrong lane proximately caused the collision with another vehicle that moved left of center to avoid the tanker. *Id.* at 136, 284 P.2d at 390.

 [¶ 23] This review of past decisions reveals that, like the Montana courts, we have long considered an emergency as one of the circumstances to be considered when determining whether a party used proper care. Both at trial and on appeal, our courts have reviewed the sufficiency of the evidence to determine if the instruction is warranted. Before enactment of the comparative negligence statutes, we did not consider it a form of contributory negligence the existence of which would bar recovery, but rather a special circumstance relevant to determining negligence. Now that comparative negligence standards apply, we continue to see that such circumstances are relevant to a jury's proper apportionment of fault and hold that comparative negligence statutes have not eliminated the necessity of the sudden emergency doctrine.

 [¶ 24] We do agree, however, with the Montana Supreme Court that this doctrine is not relevant in ordinary motor vehicle accident cases and, consequently, we think it may not be relevant in this particular snowmobile collision case. We further agree that we should be cautious in applying the doctrine and should recognize "that some 'emergencies' must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise." *Kudrna,* 572 P.2d at 191. The Montana four-part test may be helpful to trial courts in determining whether the evidence supports giving the instruction; however, trial courts should be careful to leave to the jury those questions that juries must decide while refusing to submit the instruction when doing so would result in an improper comment on the evidence and confuse the jury.

 [¶ 25] Reviewing all of the evidence in this case, we see that Roberts testified that an emergency situation was created by Randall's presence in his lane of travel. This testimony might be sufficient to permit the instruction if the evidence, viewed in Roberts' favor, established that the emergency was created or contributed to through no negligence on the part of Roberts. Roberts testified that he was approaching the crest of a hill close to the center of a snowmobile trail when Randall came over the hill in Roberts' lane of travel after having safely passed Brown who had stayed to his far right on the trail. The centers of snowmobile trails are not marked, of course, and a reasonably prudent snowmobile operator should always anticipate that another operator may also be traveling close to the center of the trail, and take appropriate action which in this case would have been to travel on the far right side of the trail. Under no circumstances could it ever be proper to ascend a hill at the center of the trail when vision of what might be coming from the other side is obscured. In other words, it appears to us that this very emergency was one that Roberts should have anticipated and should have prepared to meet when he engaged in snowmobiling ac-

tivity in an area where it was likely to arise. *Kudrna,* 572 P.2d at 191.

[¶ 26] Unmistakably, Roberts did not do that. By his own testimony, despite warning his party beforehand of the particular dangers presented by other riders to them because of their late start, Roberts was at least close to the center of the trail and not to its far right. Reasonable minds could not have decided that Roberts was using proper care when faced with a sudden emergency. The trial court properly allowed this case to proceed to the jury upon instructions proper in an ordinary motor vehicle accident case. The judgment of the court is affirmed.

SPANGLER, D.J., filed a specially concurring opinion.

SPANGLER, District Judge, Retired, concurring.

[¶ 27] I agree with the majority opinion except in its discussion of the sudden emergency doctrine and the obvious danger rule. I would discard both concepts. The sudden emergency instruction contradicts itself. It begins by stating that one who must act suddenly in the face of imminent danger is not required to use the same degree of care as at other times. But in the next breath, it says that the emergency rule does not mean that any different standard is to be applied. In any event, the instruction is unnecessary. The conduct required is still that of a reasonable person under the circumstances. Trial judges are left in the dark as to when this instruction should be used.

[¶ 28] The majority opinion indicates that the obvious danger rule is no longer an absolute defense. This is contrary to the holding in the case of *Valance v. VI–Doug, Inc.,* 2002 WY 113, 50 P.3d 697 (Wyo.2002). In my concurring and dissenting opinion in that case, I proposed that the obvious danger rule should be eliminated for all purposes.