**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT MATTHEW VIALPANDO,
individually and as personal representative
of the estate of Leigh Anne Vialpando,

    Plaintiff-Appellant,

v.

COOPER CAMERON CORPORATION,
a Delaware corporation,

    Defendant-Appellee.

No. 02-8029

(D.C. No. 00-CV-12-B)

(D. Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **BRISCOE**, Circuit Judges, and **PAYNE,** Chief District Judge.[**]

---

Plaintiff Robert Matthew Vialpando, appearing individually and as personal

representative for the estate of Leigh Anne Vialpando, appeals a jury verdict in favor of

defendant Cooper Cameron Corporation in this wrongful death action. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable James H. Payne, Chief District Judge, Eastern District of
Oklahoma, sitting by designation.

I.

This case arises out of a fatal automobile accident that occurred on Wyoming Highway 372 at approximately 12:50 p.m. on Saturday, February 21, 1998. Paul Kalivas, an employee of defendant, was driving a full-sized Chevrolet pickup from the company headquarters in Rock Springs, Wyoming, to a job site approximately 75 miles northwest of Rock Springs. Kalivas approached a "T" intersection where County Road 6 intersected with the eastern edge of the highway. He observed a Pontiac Grand Am traveling westbound on County Road 6 toward the highway. According to Kalivas, the Grand Am slowed as it approached the intersection, but did not stop at the stop sign before beginning a left-hand turn onto the highway. Kalivas slammed on the brakes and swerved the pickup to the left, but his pickup collided with the Grand Am in the southbound lane of Highway 372 near the western fog line. The collision crushed the driver's side of the Grand Am and forced both vehicles off the edge of the highway. The driver of the Grand Am, Leigh Anne Vialpando, was killed and her minor daughter, who was a passenger in the Grand Am, was seriously injured. Kalivas sustained an injury to his neck, but was not hospitalized.

Plaintiff filed this diversity action against defendant[1] on behalf of himself and as personal representative of the estate of his wife. The complaint alleged, in pertinent part,

[1] Cooper Cameron is a Delaware corporation with its principal place of business in Houston, Texas.

2

that Kalivas was driving in excess of the posted speed limit and that the victim had stopped her vehicle at the intersection before turning onto the highway. Based upon these allegations, as well as upon allegations of negligence on the part of defendant directly (i.e., failing to exercise reasonable care in the maintenance of the pickup and in hiring Kalivas), the complaint asserted claims for wrongful death and negligent infliction of emotional distress under Wyoming state law. The district court granted partial summary judgment in favor of defendant on the negligent infliction of emotional distress claim.

Plaintiff's wrongful death claim proceeded to trial. The basic facts of the collision and its aftermath were presented to the jury in the form of testimony from Kalivas, the only surviving eyewitness to the collision, and Wyoming law enforcement officers who responded to the accident scene. Kalivas testified that he was driving the pickup at a speed of 70 miles per hour prior to the collision, and that Vialpando did not stop before turning onto the highway. Both sides presented expert testimony by accident reconstruction specialists. Plaintiff's expert witness, Thomas Green, opined that Kalivas was driving the pickup at a speed of 87-90 miles per hour, well in excess of the posted speed limit of 65 miles per hour, prior to initiating his avoidance maneuvers. Green further opined that, if Kalivas had been driving his pickup at a speed of 70 miles per hour or less, he could have stopped the pickup short of the point of impact and avoided the collision. Green opined that Vialpando stopped at the intersection prior to attempting to turn onto the highway. In contrast, defendant's expert, Richard Fay, opined that the

3

collision occurred because Vialpando did not stop at the intersection and inappropriately entered the highway in the path of Kalivas' pickup. Fay criticized Green's analysis and his estimates of the driving speed of the pickup. Fay opined that Kalivas was driving approximately 70 miles per hour immediately prior to initiating his avoidance maneuvers. Fay also opined that Kalivas' avoidance maneuvers were normal, reasonable, and prudent, and that a collision would have occurred even if Kalivas had steered his pickup to the right instead of to the left (an action plaintiff's counsel suggested might have avoided the accident).

The district court granted judgment as a matter of law in favor of defendant on plaintiff's allegations that defendant failed to exercise reasonable care in the maintenance of the pickup and the hiring of Kalivas. As regards defendant, only the issue of its vicarious liability for Kalivas' alleged negligent driving remained. The jury found that defendant was negligent, but that its negligence was not a proximate cause of injury and damage to plaintiff. The jury further found that Leigh Anne Vialpando was negligent and that her negligence was a proximate cause of injury and damage to plaintiff. The jury determined that defendant was 10% at fault and Leigh Anne Vialpando was 90% at fault. The district court entered judgment on the verdict and subsequently denied plaintiff's motion for new trial.

4

II.

*Choice of law*

In a diversity case, we apply the substantive law of the forum state. E.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 495-97 (1941). Thus, we agree with the parties and the district court that Wyoming law governs this appeal.

*Sudden emergency doctrine*

Plaintiff contends the district court erred in instructing the jury regarding the sudden emergency doctrine. We review for abuse of discretion a district court's decision to give a particular jury instruction. See Quigley v. Rosenthal, 327 F.3d 1044, 1062 (10th Cir. 2003). In doing so, we also review de novo whether, as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards. See Reed v. Landstar Ligon, Inc., 314 F.3d 447, 450 (10th Cir. 2002).

Plaintiff's primary claim at trial was that Kalivas acted negligently prior to the accident by excessively exceeding the posted speed limit and steering his pickup to the left into the southbound lane of the highway. In its instructions to the jury, the district court included a series of instructions regarding generally applicable assumptions and duties of drivers under Wyoming law. Instruction 24 stated that, "[i]n the absence of reasonable cause to believe otherwise, every driver has a right to assume that other persons will obey the law and exercise due care." ROA at 114. Instruction 25 stated, in

5

part, that "[v]iolation of a statute is evidence of negligence." Id. at 116. The instructions then outlined various duties imposed on drivers under Wyoming's Uniform Act Regulating Traffic on Highways. In particular, Instruction 27 noted that, under Wyo. Stat. Ann. § 31-5-209, a vehicle is required to "be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." Id. at 117. Further, Instruction 30 noted that Wyo. Stat. Ann. § 31-5-301(a) provided that "[n]o person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." Id. at 120. Instruction 31 stated that, under Wyo. Stat. Ann. § 31-5-301(b), it was impermissible for a person to "drive a vehicle on a highway at a speed in excess of maximum limits." Id. at 121.

The district court also gave what the parties have characterized as a series of instructions on the sudden emergency doctrine. The first such instruction was given by the district court during plaintiff's case-in-chief, after plaintiff's counsel questioned Kalivas regarding statements in a Wyoming state publication that allegedly advised drivers' license applicants to steer to the right in the event another vehicle appeared in their lane. The district court stated to the jury:

> Just a minute, [plaintiff's counsel]. At this point so that there's no confusion, I will read the jury an instruction that I intend to give, and that is this: Statutes and ordinances or other regulations or rules requiring motor vehicles to be driven on the right-hand side of the highway or street are not

6

intended to and do not prohibit a motorist from driving to the left of the center of the highway or street in trying in an emergency to avoid an accident.

Id. at 693. The district court included in its official set of jury instructions two additional instructions which the parties allege touch upon the sudden emergency doctrine.

Instruction 36 stated:

> Where a person finds himself confronted with a sudden emergency which was not brought about by his own negligence, such person has a legal right to do what it appears that he should do, and that so long as he acts as a reasonable and prudent person as others would have done under similar circumstances to avoid injury, he will not be deemed negligent although it might thereafter appear that some other course of action would have been safer.

Id. at 126. Instruction 37 stated:

> Statutes, ordinances, or other regulations or rules requiring motor vehicles to be driven on the right hand side of the highway or street are not intended to and do not, prohibit a motorist exercising reasonable care from driving to the left of the center of the highway or street in trying, in an emergency, to avoid an accident.

Id. at 127.

Plaintiff contends the sudden emergency doctrine has been abrogated by Wyoming's adoption of comparative fault principles and thus is no longer an accurate statement of Wyoming law and, even assuming the doctrine remains viable under Wyoming law, the district court's instructions were not supported by the evidence at trial. Further, plaintiff contends Instruction 37 was an inaccurate statement of the law. Plaintiff also contends he was unfairly prejudiced by the manner in which the district court

7

instructed the jury on the sudden emergency doctrine in the middle of plaintiff's direct examination of Kalivas. We address these arguments in order.

*Validity of sudden emergency doctrine under Wyoming law*

Plaintiff contends that Wyoming's adoption of comparative fault principles effectively resulted in abrogation of the sudden emergency doctrine. He argues that the sudden emergency doctrine is incompatible with comparative fault principles because the doctrine impermissibly implies a different standard of care, unduly focuses on one aspect of the case, and confuses the issues of comparative negligence.

Plaintiff's overriding point, that the sudden emergency doctrine did not survive Wyoming's adoption of comparative fault principles, was recently rebutted in Roberts v. Estate of Randall, 51 P.3d 204 (Wyo. 2002). In Roberts, the plaintiffs filed a negligence action arising out of a collision between two snowmobiles on a national service forest road. The trial court rejected plaintiffs' request for an instruction on the sudden emergency doctrine, concluding the doctrine did not survive Wyoming's enactment of comparative negligence principles. On appeal, the Wyoming Supreme Court rejected the trial court's conclusion and affirmed the continuing validity of the sudden emergency doctrine:

> [W]e have long considered an emergency as one of the circumstances to be considered when determining whether a party used proper care. Both at trial and on appeal, our courts have reviewed the sufficiency of the evidence to determine if the [sudden emergency] instruction is warranted. Before

8

enactment of the comparative negligence statutes, we did not consider it a form of contributory negligence the existence of which would bar recovery, but rather a special circumstance relevant to determining negligence. Now that comparative negligence standards apply, we continue to see that such circumstances are relevant to a jury's proper apportionment of fault and hold that comparative negligence statutes have not eliminated the necessity of the sudden emergency doctrine.

Id. at 213. In light of Roberts, we hold the district court did not err in concluding the sudden emergency doctrine survived Wyoming's adoption of comparative negligence principles.[2]

*Supporting evidence for sudden emergency instructions*

Plaintiff contends the evidence presented at trial did not warrant an instruction on the sudden emergency doctrine. In particular, plaintiff argues that Kalivas was not confronted with a sudden unexpected emergency because the evidence at trial indicated he was aware of Leigh Anne Vialpando's vehicle well prior to it entering the highway. Further, plaintiff argues that Kalivas' own negligence in excessively exceeding the speed limit and steering his pickup into the southbound lane of the highway caused or contributed to the claimed emergency.

In Roberts, the court outlined the purpose of the sudden emergency doctrine:

[W]e have recognized that the existence of an emergency is not an

---

[2] Prior to the issuance of Roberts, plaintiff filed a motion asking us to certify the issue of the viability of the sudden emergency doctrine to the Wyoming Supreme Court. In light of Roberts, plaintiff's motion is now moot.

9

affirmative defense, but [rather] one of the circumstances to be considered by the finder of fact in determining whether a party has acted negligently. When one must act suddenly in the face of imminent danger he is not required to use the same degree of care as at other times, but this rule is applicable only when the person claiming its advantage has been placed in a position of sudden peril without his own fault. The emergency rule does not mean that any different standard is to be applied: the conduct required is still that of a reasonable person under the circumstances as they would appear to one who was using proper care, and the emergency is only one of the circumstances.

51 P.3d at 211 (internal quotations and citations omitted). The <u>Roberts</u> court also outlined a four-part test "helpful to trial courts in determining whether the evidence supports giving [a sudden emergency] instruction." <u>Id.</u> at 213. Under that test, a sudden emergency instruction will be warranted if there is sufficient evidence that: (1) "the claimed emergency actually or apparently existed"; (2) "the perilous situation was not created or contributed to by the person confronted"; (3) "alternative courses of action in meeting the emergency were open to such person or there was an opportunity to take some action to avert the threatened casualty"; and (4) "the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or similar situations." <u>Id.</u> at 211-12. The <u>Roberts</u> court emphasized, however, that "trial courts should be careful to leave to the jury those questions that juries must decide while refusing to submit the instruction when doing so would result in an improper comment on the evidence and confuse the jury." <u>Id.</u> at 213.

Applying those principles, we conclude the evidence presented at trial was sufficient to support giving the sudden emergency instructions. The first part of the four-

10

part test, the existence of an emergency situation, was sufficiently supported by Kalivas' testimony that the Grand Am failed to stop at the intersection and entered his lane on the highway as he was approaching the intersection, leaving him no time to deliberate about a course of action to avoid a collision. See Roberts, 51 P.3d at 213 (suggesting the presence of an oncoming snowmobile in plaintiff's lane of travel "might be sufficient to permit the instruction" as long as plaintiff did not create or contribute to the emergency); Haderlie v. Sondgeroth, 866 P.2d 703, 718 (Wyo. 1993) (characterizing as "logical" trial court's reasoning that a sudden emergency would be applicable "to a driver[] finding someone in his own lane"); see also Divilly v. Port Auth. of Allegheny Co., 810 A.2d 755, 759 (Pa. Commw. Ct. 2002) (concluding presence of oncoming car in bus driver's lane of travel would constitute sudden emergency); Piper v. McMillan, 730 N.E.2d 481, 489 (Ohio Ct. App. 1999) (indicating sudden emergency doctrine encompasses object, such as oncoming vehicle, appearing immediately in front of another vehicle); cf. Wilhelm v. Cukr, 230 P.2d 507, 509 (Wyo. 1951) (noting bus driver who regularly drove on highway was familiar "with the fact that vehicles came out of the intersecting county road upon [the] highway"). Although plaintiff argues this cannot be considered an emergency because Kalivas admitted he visually tracked the Grand Am as it approached the intersection, we disagree. Given the evidence at trial and the applicable traffic laws, we conclude that a reasonable person in Kalivas' situation would not have expected the Grand Am to fail to stop at the stop sign and enter the highway in front of an oncoming

11

vehicle traveling at highway speed. See ROA at 344 (testimony of Trooper Barry Tippy that Kalivas had the right to assume the way was clear to travel through the intersection); see generally Gerdom v. Gerdom, 444 P.2d 34, 35-36 (Wyo. 1968) (defining "emergency," for purposes of applying doctrine, as "an unforeseen occurrence or condition" or "a sudden or unexpected occasion for action").

With respect to the second part of the test, we conclude there was sufficient evidence to allow the jury to find that Kalivas did not create or contribute to the emergency. Although plaintiff presented expert testimony suggesting that Kalivas was traveling at an excessive rate of speed as he approached the intersection, defendant countered that evidence. In particular, Kalivas testified he was driving no faster than 70 miles per hour as he approached the intersection, and defendant's expert witness testified that the physical evidence supported Kalivas' testimony on this point. Further, there was no evidence indicating that, if Kalivas was in fact driving 70 miles per hour, his conduct would have caused or contributed to the driver of the Grand Am misjudging the time available to cross the northbound lane of the highway and enter the southbound lane. As for Kalivas' action in steering his pickup into the southbound lane, that had nothing to do with the Grand Am entering the highway; instead, that action was taken in direct response to the Grand Am's entry.

The third and fourth parts of the test were also satisfied. At trial, it was plaintiff's position that Kalivas could have steered the pickup to the right to avoid the collision.

12

Notwithstanding that position, two witnesses testified that Kalivas' decision to steer his pickup to the left was a "natural" or "reasonable" and "prudent" reaction in response to the Grand Am appearing in Kalivas' lane of travel. ROA at 339 (testimony of Trooper Tippy), 938 (testimony of defendant's expert, Richard Fay).

Finally, it is true, as noted by plaintiff in his supplemental pleadings, that the Roberts court stated that the sudden emergency doctrine "is not relevant in ordinary motor vehicle accident cases." 51 P.3d at 213. However, the court further stated that "some 'emergencies' must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise." Id. (internal quotations omitted). Further, the question of whether the sudden emergency doctrine applies hinges on the four-part test outlined above and not simply on the fact that an accident involved a motor vehicle. Thus, for the reasons outlined above, we conclude the accident at issue in this case cannot be characterized as an "ordinary motor vehicle accident" and the district court did not err in concluding the evidence warranted a sudden emergency instruction.[3]

---

[3] Even assuming, arguendo, that the appearance of the Grand Am in the northbound lane of the highway did not constitute a sudden emergency, we would be reluctant to conclude that plaintiff was prejudiced by the instructions on the sudden emergency doctrine. Those instructions would have come into play only when the jury was considering whether Kalivas responded reasonably to the entry of the Grand Am onto the highway. Notably, although plaintiff's counsel suggested Kalivas could have steered his pickup to the right rather than the left, there was no evidence indicating that another more reasonable course of action was available to Kalivas. Indeed, Trooper Tippy, the lead law enforcement investigator of the accident, testified that Kalivas' response was natural and that it would have been legal for Kalivas to cross the center line of the highway in an attempt to avoid a collision. Further, the focus of plaintiff's expert

13

*Accuracy of Instruction 37*

Plaintiff complains that, even if a sudden emergency instruction was warranted, Instruction 37 was an inaccurate statement of the law. According to plaintiff, the instruction "fail[ed] to inform or guide the jury as to its obligation to first determine whether there [wa]s an emergency," and also "fail[ed] to instruct on the concept that a motorist's negligent conduct is not forgiven if that motorist contributed to or caused the emergency." Aplt. Br. at 41.

As noted above, Instruction 37 stated:

> Statutes, ordinances, or other regulations or rules requiring motor vehicles to be driven on the right hand side of the highway or street are not intended to and do not, prohibit a motorist exercising reasonable care from driving to the left of the center of the highway or street in trying, in an emergency, to avoid an accident.

Id. at 127. This language, taken directly from Dallason v. Buckmeier, 284 P.2d 386, 390 (Wyo. 1955), is a valid statement of Wyoming law. Indeed, in Roberts, the court cited Dallason and quoted with approval the same language included in the instruction. Although plaintiff complains that the instruction failed to refer to certain elements of the four-part test for determining the applicability of the sudden emergency doctrine, it is clear those points were covered in Instruction 36. Thus, as noted in Instruction 36, the

---

testimony was that Kalivas was excessively speeding prior to the accident and that he could have avoided the collision if he had been driving 70 miles per hour or less. Thus, it appears the sudden emergency instructions had little, if any, effect on the outcome of the case.

14

jury first had to determine whether a sudden emergency existed and whether Kalivas created or contributed to the emergency. The language of Instruction 37 would have come into play only if the jury found the existence of an emergency, and only to the extent the jury was considering whether Kalivas acted reasonably in response to that emergency.

*Timing of initial instruction on sudden emergency doctrine*

Plaintiff contends the district court's decision to read the language of Instruction 37 to the jury during Kalivas' testimony was erroneous and prejudicial. In particular, plaintiff asserts the district court's prefacing remarks "implied, if not outright stated, that plaintiff's counsel's line of questioning [of Kalivas regarding whether he should have steered to the right] was improper based upon some 'confusion' as to the law or alternatively that plaintiff's counsel was somehow trying to 'confuse' the jury." Aplt. Br. at 44. Plaintiff further asserts that the giving of the instruction "tended to indicate a belief by the Court that: (1) Kalivas was, in fact, confronted with an emergency; (2) it was therefore proper to turn to the left in order to avoid a collision; and, (3) the jury should not be confused about this issue." Id. Finally, plaintiff asserts the district court's actions "unduly emphasized one instruction over all of the others." Id.

In Hynes v. Energy West, Inc., 211 F.3d 1193 (10th Cir. 2000), we addressed a similar issue in a case also arising out of the District of Wyoming. There, the appellant

15

claimed the district court "made a number of improper comments to the jury during the course of the trial." Id. at 1201. In particular, appellant took issue with the district court's decision, upon admitting a certain item of evidence, to give the jury a mid-trial instruction regarding the duty of a gas company to maintain and supervise its facility. On appeal, we found no error. In reaching this conclusion, we outlined the applicable standard of review:

> The trial court has wide discretion in stating facts and commenting on the evidence. It is within the trial court's power to direct the trial in a manner reasonably thought to bring about a just result and in pursuit of that goal nonprejudicial comments may be made from time to time. Conduct of trial proceedings will not be disturbed unless it affirmatively appears from the record that the trial court abused its discretion.

Id.

Applying that standard of review here, we conclude the district court's decision to give a mid-trial instruction on the sudden emergency doctrine did not rise to the level of an abuse of discretion. As noted, the sudden emergency doctrine remains viable under Wyoming law and the evidence presented in this case was sufficient to warrant giving an instruction on the doctrine. Further, contrary to plaintiff's assertion, merely giving the mid-trial instruction did not indicate the trial court's view of the evidence. Instead, it appears the mid-trial instruction was intended to rebut plaintiff's counsel's attempts to persuade the jury, through questioning of highway patrol officers, that it was necessarily illegal for Kalivas to steer his vehicle into the southbound lane of the highway.

Although we reject the plaintiff's claim of error in this case, we caution the district

16

court regarding its practice of giving mid-trial instructions. At the time this case was tried, Federal Rule of Civil Procedure 51, which addresses "Instructions to jury," stated only that a court, "at its election," could "instruct the jury before or after argument, or both." Fed. R. Civ. P. 51 (2001). As recently amended (effective December 31, 2003), Rule 51 is now more clear, granting a district court authority to "instruct the jury at any time after the trial begins and before the jury is discharged." See Fed. R. Civ. P. 51(b)(3). Importantly, however, Rule 51 also expressly now requires a district court to "inform the parties of its proposed instructions . . . before instructing the jury," id. at (b)(1), and to "give the parties an opportunity to object on the record and out of the jury's hearing to the proposed instructions." Id. at (b)(2). Thus, a district court can no longer give the jury a mid-trial instruction without first advising the parties of its intent to do so and giving the parties an opportunity to object to the proposed instruction.

*Refusal to instruct on presumption of due care in favor of decedent*

Plaintiff contends the district court erred in refusing his tendered instruction "informing the jury that Leigh Anne [Vialpando] was entitled to a rebuttable presumption that she exercised due care."[4] Aplt. Br. at 48. Applying an abuse of discretion standard,

---

[4] The tendered instruction stated:
> You are instructed that there is a presumption that Leigh Anne Vialpando was exercising due and proper care for the protection of her person and the preservation of her life at the time of the collision. This presumption arises from the instinct of self-preservation and the disposition of persons to avoid personal harm. This presumption is not conclusive, but is a matter to be considered by the jury, in connection with all of the other

17

we find no error on the part of the district court in refusing the tendered instruction. See Quigley, 327 F.3d at 1062.

The Wyoming Supreme Court "has recognized the validity of the presumption that in the absence of eye witnesses to [an] accident or other evidence sufficient to dispel or rebut the presumption, the decedent, acting on the instinct of self-preservation, was exercising ordinary care." DeJulio v. Foster, 715 P.2d 182, 187 (Wyo. 1986). Here, there was an eyewitness to the accident (Kalivas), who repeatedly stated that Vialpando's vehicle did not stop at the stop sign. In light of that testimony, the district court correctly concluded the tendered instruction regarding a "presumption of due care" on the part of Vialpando was not warranted under Wyoming law.

Plaintiff also complains the district court failed to instruct the jury "that the defendant had the burden of proof to show that Leigh Anne was negligent." Aplt. Br. at 51. However, plaintiff failed to raise this point during trial. Thus, the issue has been waived, barring plain error. See Quigley, 327 F.3d at 1063. "The plain error exception in civil cases has been limited to errors which seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotations omitted). "Indeed, we have stated that it is an extraordinary, nearly insurmountable burden." Id. (internal quotations and modifications omitted).

---

facts and circumstances of the case.
ROA at 67.

18

After reviewing the record on appeal, we conclude plaintiff has failed to satisfy this "extremely high burden." Id. It is true, as noted by plaintiff, that Wyoming law places the burden of proof on a defendant to prove the plaintiff was contributorily negligent. See Elite Cleaners and Tailors, Inc. v. Gentry, 510 P.2d 784, 789 (Wyo. 1973). It is further true that the instructions did not contain an express statement to this effect. Importantly, however, the instructions "did not state that [plaintiff] had to prove the absence of fault on the part of" Leigh Anne Vialpando. Aplee. Br. at 24. Further, Instruction 9 informed the jury that the defendant had the burden of proof with respect to affirmative defenses, although it failed to specify that Leigh Anne Vialpando's alleged contributory negligence was an affirmative defense. Finally, a review of the trial transcript strongly suggests the issue of Leigh Anne Vialpando's contributory negligence turned on whether the jury found more credible the testimony of plaintiff's expert witness that her vehicle stopped at the intersection or that of Kalivas and the defendant's expert that her vehicle did not stop at the intersection. Clearly, the verdict indicates the jury found the latter witnesses more credible, and we are doubtful that the absence of a specific instruction on defendant's burden of proof made a difference in the outcome of the trial.

*Admission of lay witness testimony regarding Wyoming law*

Plaintiff contends the district court erred in allowing Trooper Tippy and Lieutenant David Gray to testify in response to questioning from defense counsel regarding whether

19

Wyoming law imposed a duty on Leigh Anne Vialpando to yield the right-of-way to oncoming traffic regardless of the speed or location of such oncoming traffic (both officers opined that the duty to yield the right-of-way existed regardless of the speed of oncoming traffic). According to plaintiff, this testimony was erroneous because "Kalivas forfeited his right to rely on the right-of-way when he chose to exceed the speed limit." Aplt. Br. at 53. Further, plaintiff asserts this testimony "effectively increased Leigh Anne's burden from reasonable care under the circumstance to strict liability for failing to yield to traffic on the highway – wherever located." Id. at 54. We review for abuse of discretion the district court's decision to admit or exclude evidence generally, including testimony such as that given by Tippy and Gray. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 968 (10th Cir. 2001).

At the outset, we take issue with plaintiff's assertion that the testimony of these two witnesses was erroneous. We are persuaded that Tippy and Gray accurately testified regarding the duties of a driver in the position of Leigh Anne Vialpando under Wyoming traffic laws. Under Wyoming law, the term "right-of-way," as used in reference to vehicular travel, "means the right of one (1) vehicle . . . to proceed in a lawful manner in preference to another vehicle . . . approaching under such circumstances of direction, speed and proximity as to give rise to danger of collision unless one grants precedence to the other." Wyo. Stat. Ann. § 31-5-102(xxxix). In turn, Wyoming law provides that when a driver approaches a stop sign, he or she is required to stop "at the point nearest the

20

intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway," and must "yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard."[5] Wyo. Stat. Ann. § 31-5-222(b). Notably, plaintiff points to no Wyoming cases or statutes, and our research has failed to produce any, indicating that a driver's duty to yield the right-of-way is somehow alleviated if an oncoming driver is exceeding the posted speed limit.

We also reject plaintiff's assertion that the testimony of the two officers effectively imposed strict liability on Leigh Anne Vialpando for failing to yield the right-of-way at the intersection, or otherwise increased her burden of care. Plaintiff's argument appears to hinge on the assumption that the jury, based on the officers' testimony, would have felt bound to find Leigh Anne Vialpando negligent for entering the southbound lane of the highway even if it also found that Kalivas was excessively speeding prior to the accident, that Vialpando stopped at the stop sign and initially yielded the right-of-way to Kalivas, and that Vialpando, due to Kalivas' excessive speed, misjudged the necessary amount of time to safely cross into the southbound lane of the highway. This assumption, however, is inconsistent with the district court's jury instructions. The district court specifically instructed the jury that it was not required to accept opinions expressed by lay witnesses

---

[5] The jury was specifically instructed regarding the language of this statute. App. at 118 (Instruction 28).

such as Tippy and Gray. App. at 102 (Instruction 14). Further, the district court instructed the jury that the "word negligence . . . mean[t] the failure to use ordinary care," and that "[o]rdinary care mean[t] the degree of care which might reasonably be expected of the ordinary careful person under the same or similar circumstances." App. at 110. Because juries are presumed to follow the court's instructions, see Questar Pipeline Co. v. Grynberg, 201 F.3d 1277, 1287 (10th Cir. 2000), the jury in this case would have been free to take into account whether Kalivas' pickup was excessively speeding prior to the accident and whether that excessive speed reasonably affected Vialpando's perception at the time she decided to cross the northbound lane of the highway. In other words, the jury in this case presumably would not have felt bound to impose strict liability on Vialpando for crossing the northbound lane of the highway.

Even assuming for purposes of argument that it was error for the district court to allow the officers to testify in this regard, it is obvious that any such error was harmless. As noted, the outcome of this case hinged in large part on the question of whether Kalivas was excessively speeding prior to the accident. The jury verdict strongly indicates that it found against plaintiff on this issue. In light of that presumptive finding, plaintiff's "strict liability" theory is not compelling.

The judgment of the district court is AFFIRMED. Plaintiff's motion to certify a

question of law to the Wyoming Supreme Court is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

23